AETNA LIFE & CASUALTY COMPANY, Plaintiff-Appellee, *v.* ANFINSEN PLASTIC MOLDING CO., Defendant-Appellant.

Second District (2nd Division) No. 76-18

Opinion filed March 29, 1977.

Richard J. Larson, Peter K. Wilson, Gary K. Mickey, and Donald L. Puckett, all of Puckett, Barnett, Larson, Mickey, Wilson & Ochsenschlager, of Aurora, for appellant.

Robert E. Jones, of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Stanley J. Davidson, of counsel), for appellee.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

This is an appeal from a judgment entered by the circuit court of Kane County in favor of Aetna Life & Casualty Company (hereinafter referred to as Aetna) in an action to recover certain additional premiums which Aetna billed to the insured, Anfinsen Plastic Molding Co. (hereinafter referred to as Anfinsen), and which Anfinsen refused to pay

Anfinsen had previously been insured by Aetna for workmen's compensation liability under a conventional annual policy, at excess annual rates, which Anfinsen obtained through a general insurance broker by the name of Konen.

Mr. Wykstra, underwriting manager for Aetna, testified that Anfinsen was paying a premium for workmen's compensation insurance based on 1.62 of the average rate, that is, 62% above the average annual rate and that the 62% additional factor was the result of poor experience for the past three years. It appears that in April 1970, after a review by Aetna of Anfinsen's problem with workmen's compensation insurance, Aetna recommended to Konen that a retrospective premium rating plan be adopted for the Anfinsen account. Accordingly, Mr. Konen and a direct Aetna representative, Mr. Van Hart, called on Mr. LaHam, president of Anfinsen, and discussed the writing of a policy on the basis of a three-year retrospective rating plan. A three-year retrospective rating plan, as indicated by the retrospective premium endorsement attached to the policy, provides that the premium for the first policy year shall be based on the standard annual premium plus the incurred losses (if any) for the first year, the premium for the second year shall be based on the standard premium plus the incurred losses for the two-year period and the third-year premium shall be based on the total standard premium plus the losses incurred during the three-year period. The total premium paid by

the insured is thus tied to the losses for the three-year period. The policy provided that it might be cancelled at any time by the insured by mailing the policy back to the company with a request for cancellation or by the company by giving 10 days' written notice to the insured. The Retrospective Premium endorsement provided that in the event of cancellation or nonrenewal by the company the retrospective premiums should be computed for the period that the policy was in force in accordance with the provisions of the endorsement.

Aetna filed a motion for summary judgment. In its affirmative defense to the motion for summary judgment, Anfinsen contended that the broker, Konen, represented that the policy of insurance was a "three year Retro Plan" which would cover the defendant for a three-year period at a fixed premium; that he further represented that at the end of the three-year period the loss ration would be averaged and the additional premium, if any, would be charged to the defendant; that he further represented that the said policy would not be cancelled nor would premiums be charged on the basis of losses for one year.

After a hearing on the motion for summary judgment the motion was denied and the case proceeded to a bench trial on the merits. At trial Anfinsen's defense depended almost entirely on the following testimony which Anfinson relied on in establishing that the policy was represented as a three-year contract:

"Q [Defendant's attorney] And, was it explained to Mr. LaHam that this policy would be in force for three years?

A [Mr. Konen] Yes, sir, our—the letter to me from the company was to sell a three year retro plan. Therefore, Mr. Van Hart and I went out to sell a three year retro plan and this is the way it was explained to Mr. LaHam.

Q [Defendant's attorney] That it would be in force for three years?

A [Mr. Konen] Yes, sir. Just to explain that further, I don't think there was any particular emphasis on, you know, it's going to start May 3rd of '70 and go to May 3rd of '73, because all we continued to talk about is a three year plan.

* * *

Q [Defendant's attorney] Was it ever represented to Mr. LaHam that this was a one-year policy that you were selling him?

A [Mr. Konen] No, sir.

Q [Defendant's attorney] And, was it, in fact, represented to him that it was a three-year plan?

A [Mr. Konen] Yes.

Q [Defendant's attorney] And, was that your understanding of what it was?

A [Mr. Konen] That was my understanding.

Q [Defendant's attorney] And, is that what was said by Mr. Van Hart, also?

A [Mr. Konen] Yes, sir."

On the basis of the foregoing testimony Anfinsen contends that Aetna's policy was misrepresented as a noncancelable three-year policy, therefore the cancellation at the end of the first year (actually, a nonrenewal rather than a cancellation) was wrongful and that Aetna should be barred from recovering its additional premium or, in the alternative, that the policy "be reformed to conform to the agreement of the parties."

Aetna, however, makes a distinction between a "three-year plan" and a three-year policy. Aetna contends the *policy* was never represented to be noncancelable—indeed, both parties had the right to cancel, the insured by returning the policy with a request for cancellation, the company by 10 days' written notice. It is to be noted that in the above cited passage from the testimony of Mr. Konen, while the question asked was whether the *policy* would be in force three years, Konen in his answer stated that they went out to sell a three-year retro plan "and this is the way it was explained to Mr. LaHam."

Whether intentional or not Anfinsen's attorney clearly treated the *policy* and the *plan* as interchangeable but it is obvious from the policy itself, as well as from the testimony, that the policy was a standard contract with the usual provisions, including the cancellation privilege by both the insured and the company, whereas the *plan* was the rating scheme which set out the formula for determining the premium. It was to be determined by reference to three years' experience in the expected course of events but there is no evidence that Aetna's agents or employees ever represented that the policy was not cancelable. The premium endorsement itself specifically spells out the basis of the premium calculation in the event of cancellation prior to the end of the three-year period.

While the testimony of Mr. Konen indicated clearly that Aetna offered a three-year plan, there is no testimony that they offered a three-year non-cancelable policy. We think the distinction is important because while the testimony of Mr. Konen indicates that Mr. LaHam was told the policy was to be written on a three-year retroactive rating plan, it does not indicate the *policy* was to be written for three years or that it was not to be cancelable.

Anfinsen contends that as a result of the misrepresentation Aetna is not entitled to collect its earned premium, or in the alternative, that Anfinsen is entitled to have the policy reformed to extend for three years and the additional premium should be adjusted on that basis.

■■ It is true, of course, that Aetna could not claim the fruits of a

contract which was never made between the parties but Aetna clearly extended insurance protection to Anfinsen and Aetna was required to pay the claims incurred by Anfinsen during the period it is being charged for. We do not think it is possible for Anfinsen to disclaim liability for the additional premium under these circumstances. The earned premium for the year for which Aetna is billing Anfinsen was clearly earned by Aetna, however the parties may differ as to the intended life of the policy. If Anfinsen could prove it was required to buy insurance elsewhere at a higher cost because of the cancellation it might have a basis for damages for breach of contract. In its answer and its affirmative defense Anfinsen has not produced any such evidence or made any claim on such basis—it has merely sought to avoid the obligation to pay the additional premium earned for the first year of the policy. No damages having been alleged, we see no basis of setoff or counterclaim against the additional premium charge.

On the other hand, the alternative prayer for reformation of the policy term seems impracticable. It was disclosed at the oral argument that Anfinsen procured other insurance to replace the Aetna policy and we see no way in which the Aetna coverage could be extended for a time which has already passed. Even if Anfinsen were to be allowed to calculate what it owed Aetna on the basis of three years' experience, two of these years were with another carrier and it would be paying double premiums for two of these years—1971 to 1972 and 1972 to 1973. It hardly seems probable Anfinsen would gain from such an arrangement.

■■ In any event, however, we see no basis for reforming the policy. Reformation of a written contract must be based on fraud in the inducement to enter into the contract or on a mutual mistake of fact (*Darst v. Lang* (1937), 367 Ill. 119). Anfinsen has not seriously contended there was fraud in the inducement. Even if there *was* a misunderstanding as to the intended life of the policy it can hardly be contended that Aetna entered into the contract intending to cancel at the end of one year because Aetna clearly did not make the decision not to renew until near the end of the first year, thus there could not have been fraud in the inducement. Moreover, Anfinsen should not be able to avoid the contract for fraud in the inducement after having received the insurance protection. Claims were actually paid on its behalf.

■■ We are entirely aware of the possibility here of an honest misunderstanding. Conceding, however, that Mr. LaHam honestly believed he was being offered a three-year, noncancelable policy, the evidence adduced at trial does not, in our opinion, sustain the theory that Aetna's agent or employee was responsible for such misunderstanding, either negligently or deliberately. So far as we can gather from the

testimony, while LaHam claims he was told the policy carried an ironclad guarantee of three years, the only positive evidence from Konen was that he was selling a policy with a three-year retrospective plan of premium calculations. So far as LaHam was concerned the difference between a three-year rating plan and a three-year noncancelable policy may have been insignificant. But to the Aetna agent or employee, the difference may have been so apparent that they did not realize the insured's confusion about the term of the policy. If it was not customary to write long term workmen's compensation policies—and LaHam testified that his previous coverage always had been on an annual term basis—it is easily understandable that the Aetna agent might not be alert to the possibility of a misunderstanding and thus might fail to stress the term of the policy as compared with the range of the rating plan. We think this is not sufficient basis to disavow the written contract. The policy was very clear as to its term and as to the right of the company to cancel. The insured raised no question about this until long after the losses had been incurred, the policy had been refused renewal and an additional premium had been charged. On the basis of the testimony of Konen we see no evidence of misrepresentation and LaHam's testimony merely indicated *his* understanding of the policy, not any direct conversation with either Konen or VanHart as to what words of theirs justified his assumption. While, therefore, it is apparent from Mr. LaHam's testimony that there was a misunderstanding on LaHam's part, there is no persuasive evidence from the testimony that there was a misrepresentation by Aetna.

The intention was manifestly to compute the premium for the anticipated three-year term of the policy in retrospect, after the three years' experience had been developed. The company had a right to cancel the policy at any time after giving proper notice as set forth in the policy. A three-year plan, or even a three-year policy, are both consistent with a cancellation after one year. In this case, however, the company did not actually cancel—it merely refused to renew after the first year had passed. Nor can it be assumed that this was an arbitrary decision based merely on the company's present advantage. A letter of April 21, 1971, from Aetna to its agent, Konen, which is in evidence, notifying him that Aetna did not wish to renew the policy stated: "[t]his risk failed to meet our basic underwriting requirements at this time." Another letter, dated April 22, 1970, and also in evidence, speaks of " * * * the two large losses the insured has suffered during the past three years as well as * * * the insured's lack of follow-up on our present safety recommendations," and "the lack of training as a result." These two letters present a clear picture of a questionable underwriting risk which did not improve as was expected under the incentive of the retrospective rating plan. It cannot be

assumed, therefore, that the nonrenewal by the company was arbitrary or unjustified. In any event, as stated by the trial court in his letter to counsel explaining his decision:

"The thrust of defendant's case is that Aetna agreed not to cancel. As reasoned above, an agreement not to cancel *cannot be inferred from the mere act of offering a three-year plan.* Nor is there any evidence to support an actual representation by Konen or anyone that Aetna would not cancel."

We find no error in the record before us and accordingly the judgment of the circuit court of Kane County is affirmed.

Judgment affirmed.

SEIDENFELD and GUILD, JJ., concur.