EUGENIA JONES OLDWEILER *et al.*, Plaintiffs-Appellees, v. PEOPLES BANK OF BLOOMINGTON, Trustee, *et al.*, Defendants (Princeton University, Defendant-Appellant).—EUGENIA JONES OLDWEILER *et al.*, Plaintiffs-Appellees, v. PEOPLES BANK OF BLOOMINGTON, Trustee, Defendant (Brokaw Hospital, n/k/a/ BroMenn HealthCare, *et al.*, Defendants-Appellants; Princeton University, Defendant).

Fourth District Nos. 4—87-0090, 4—87—0094 cons.

Opinion filed September 29, 1987.

Rosenberg, Bickes, Johnson & Richardson, of Decatur (David L. Johnson, of counsel), for appellant Princeton University.

William B. Lawrence, of Markowitz & Lawrence, and Russell E. DePew, of DePew, Grimes & DePew, both of Bloomington, and C. William Bockelman, of O'Neill & Bockelman, P.C., of Lake Forest, for appellants Brokaw Hospital, Baby Fold and Lake Forest Academy.

Morthland, Bolen & Morthland, of Decatur (T. G. Bolen, of counsel), for appellees.

JUSTICE McCULLOUGH delivered the opinion of the court:

The plaintiffs filed suit in the circuit court of Macon County, Illinois, seeking distribution of real estate pursuant to the terms of an *inter vivos* trust agreement. The defendant trustee, the Peoples Bank of Bloomington, filed a counterpetition for construction of the trust instrument by the court. Following a hearing, the court ordered the trustee to transfer the real estate to the plaintiffs under the terms of the trust.

The charitable defendants, Baby Fold, Brokaw Hospital, Lake Forest Academy, and Princeton University, appeal the order of the circuit court. The cases have been consolidated for review. The defendants maintain that the court erred in ordering conveyance of the real estate pursuant to a "partial termination" provision of the trust instrument. We affirm the order of the circuit court.

In 1945, Ralph DeMange executed a trust agreement which was subsequently amended in 1947, 1954, and 1959. Under the terms of

the trust (paragraph 9-B, Distribution of Income), the donor was to receive income for life. Upon the death of the donor, his daughter, Mary DeMange Kennedy, was to receive the income for life. The trust then provided for distribution of income, *per stirpes*, to the surviving descendants of Kennedy. In default of any of the above-named income beneficiaries, the donor's aunt, Julia F. Hodge, and donor's cousin, Mary Bell, were to receive the trust income, with the survivor to receive all income for life.

Paragraph 9-C provided for "Partial Termination of the Trust," specifically with respect to a 200-acre farm, termed the "Forsythe Farm," located in Macon County. Partial termination occurred at any time during the existence of the trust if the donor was deceased and Mary D. Kennedy was deceased with no living descendants. Upon partial termination, the Forsythe Farm ceased to be a part of the trust estate.

Under paragraph 9-C, the Forsythe Farm was to be distributed *per stirpes*, one-half to the descendants of Marian Ewing Winchester and one-half to the descendants of Eugenia Ewing Johns, sisters of the donor's wife, Emma Ewing DeMange. In default of these distributees, the Forsythe Farm was to be distributed *per stirpes*, to the descendants of Mary Palmer Ewing, mother of Emma Ewing DeMange.

Paragraph 9-C further provided:

> "[I]f there is no living distributee under the provisions of this sub-paragraph (9-C) the provisions of this sub-paragraph shall become void and without effect and the land herein described shall remain part of the Trust Estate."

The trust was to terminate 20 years after the death of the survivor of the named income beneficiaries (donor, Mary D. Kennedy, Julia P. Hodge, Mary Bell). If Mary D. Kennedy died without issue, the trust would terminate upon the death of the survivor of the above-named beneficiaries.

Upon termination of the trust, following payment of administrative fees and expenses, the remaining trust estate and all undistributed net income was to be distributed as follows:

> "(9-D-1) Per stirpes to the descendant or descendants of Mary D. Kennedy, living at the expiration of the Trust.
>
> (9-D-2) If there is no descendant of Mary D. Kennedy living at the expiration of the trust, one-fifth each to the Baby Fold and Brokaw Hospital situated in Normal, Illinois, for their respective perpetual endowment funds; one-fifth to Lake Forest Academy, formerly of Lake Forest, Illinois, for the endowment of a scholarship in the name and memory of my son, Ewing A.

DeMange, of the Class of 1941, and two-fifths to Princeton University, Princeton, New Jersey, for the endowment of a scholarship in the name and memory of my said son of the Class of 1945."

The donor, Ralph DeMange, died on December 18, 1964, and was survived by all named income beneficiaries. Julia Hodge died on February 2, 1966. Mary Bell died sometime after the death of donor and prior to the death of Mary D. Kennedy. The specific date of death, however, cannot be determined from the record. On August 22, 1985, Mary D. Kennedy died leaving no descendants.

The plaintiffs herein are the descendants of Marian Ewing Winchester and Eugenia Ewing Johns. The plaintiffs maintain that they are entitled to distribution of the Forsythe Farm pursuant to the partial termination clause of the trust agreement. The defendants, however, assert that the Forsythe Farm is an asset of the trust estate to be distributed upon termination of the trust. Defendants claim that the partial termination clause entitling plaintiffs to distribution had to have come into effect during the existence of the trust, and cannot operate simultaneously with the termination of the trust.

Following a hearing on the matter, the trial court found the provisions of the trust unambiguous and disallowed any extrinsic evidence regarding the intent of the donor. The court further ruled that the partial termination clause and the termination clause "are not irreconcilable and that the death of Mary D. Kennedy without descendants satisfied the conditions of both paragraphs and both can be given effect in accord with the donor's intent." The court went on to note that it was "apparent from the trust instrument itself that it was the donor's intent to treat the Forsythe Farm separate from the other trust assets and that only if there were no descendants of Marian Ewing Winchester and Eugenia Ewing Johns would the farm go to charity." As a result, the trustee was ordered to transfer the Forsythe Farm to the plaintiffs.

Initially, we note that the construction and legal effect of an instrument raises a question of law in the absence of any material question of fact. (*Northern Illinois Medical Center v. Home State Bank* (1985), 136 Ill. App. 3d 129, 142, 482 N.E.2d 1085, 1095.) Consequently, when evidence before the trial court is entirely documentary, the appellate court is not bound by the trial court's findings, and may independently construe the instrument unrestrained by the trial court's determination. 136 Ill. App. 3d 129, 142, 482 N.E.2d 1085, 1095.

The primary concern in construing a trust is to ascertain

the intent of the donor at the time the trust was executed. (*First National Bank v. Canton Council of Campfire Girls, Inc.* (1981), 85 Ill. 2d 507, 426 N.E.2d 1198; *Warren Boynton State Bank v. Wallbaum* (1986), 143 Ill. App. 3d 628, 493 N.E.2d 21.) In determining intent, the court must consider the entire document, giving words their plain and ordinary meaning. (*First National Bank v. Canton Council of Campfire Girls, Inc.* (1981), 85 Ill. 2d 507, 426 N.E.2d 1198; *Warren Boynton State Bank v. Wallbaum* (1986), 143 Ill. App. 3d 628, 493 N.E.2d 21.) In construing trusts, the court will apply the same rules of construction applicable in wills and contracts cases. (*In re Halas* (1984), 104 Ill. 2d 83, 470 N.E.2d 960.) When, however, the language of an instrument is clear and unambiguous, there is no need to resort to the rules of construction.

 The provisions of a trust are not to be read in isolation. Intent must be gleaned from a consideration of all language utilized and not any particular paragraph, phrase, sentence, or clause. (*In re Support of Halas* (1984), 104 Ill. 2d 83, 470 N.E.2d 960; *In re Estate of Steward* (1985), 134 Ill. App. 3d 412, 480 N.E.2d 201.) Where possible, effect should be given to all language and any provisions which appear to be conflicting or inconsistent should be reconciled or harmonized such that the donor's intent can be fully realized. *In re Support of Halas* (1984), 104 Ill. 2d 83, 470 N.E.2d 960.

We agree with the trial court that the trust agreement involved herein is unambiguous. Consequently, there is no need to resort to rules of construction. The intent of the donor can be gleaned from the language employed in its plain and ordinary sense.

██ The partial termination clause evidenced a clear intent to treat the Forsythe Farm as separate property distinct from the corpus of the trust. Language utilized indicated that the farm was to be distributed to the surviving descendants of the donor's wife, the Ewing distributees. Distribution pursuant to the partial termination clause specifically provided that the Forsythe Farm would only revert to the trust estate in the event that no Ewing descendants survived. The property, as well as any income generated therefrom, was to be treated separate and distinct as long as the donor's wife's family remained in existence.

This intent is further supported by the limitation of the trustee's powers to deal with the Forsythe Farm as delineated in paragraphs 9-G-9 and 9-G-12 (Powers of Trustee). It is clear the donor hoped that the farm would remain in the family, either through his daughter's descendants, and in default thereof, through the descendants of his wife. As noted by plaintiffs, a distribution of property to relatives of the

donor is preferable, even where the named relatives, as here, are not related by blood, but are next to kin.

The partial termination and termination clauses of the trust instrument are not irreconcilable. In giving effect to both clauses simultaneously, the entire trust agreement will be fulfilled. The defendants are still entitled to distribution of the trust income. To except the Forsythe Farm from the trust corpus, pursuant to the clearly evidenced intent of the donor, was a proper construction of the trust agreement. As such, we find no error. The order of the trial court is affirmed.

Affirmed.

SPITZ, P.J., and GREEN, J., concur.