PRE-FAB TRANSIT COMPANY, Plaintiff and Counterdefendant-Appellee, v. NORTHBROOK PROPERTY AND CASUALTY INSURANCE COMPANY *et al.*, Defendants and Counterplaintiffs-Appellants.

Fourth District   No. 4—91—0835

Opinion filed September 17, 1992.

Dunn, Goebel, Ulbrich, Morel & Hundman, of Bloomington (John L. Morel, of counsel), for appellants.

Edward H. Rawles, of Reno, O'Byrne & Kepley, P.C., of Champaign, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

Defendants, Northbrook Property and Casualty Insurance Company and Northbrook Indemnity Company (Northbrook), issued insurance polices to plaintiff, Pre-Fab Transit Company (Pre-Fab), which contained a standard premium and retrospective premium endorsement. Pre-Fab filed a declaratory judgment action seeking construction of the retrospective premium endorsement to these policies. Northbrook filed an answer and counterclaim against Pre-Fab to collect the retrospective premium owed plus interest. Northbrook contended that the retrospective premium owed to it by Pre-Fab is $382,167 plus interest; Pre-Fab contended that the premium owed under the retrospective premium endorsement is $99,286. The trial court construed the retrospective premium endorsement to provide that the maximum and minimum retrospective premiums were to be calculated by line of insurance, *i.e.*, auto liability, workers' compensation, employer liability, and general liability; and then the maximum and minimum retrospective premiums for each line of insurance were to be combined to produce the actual minimum and maximum retrospective premiums. This decision concurred with Pre-Fab's contentions. The trial court found that Pre-Fab owed Northbrook $99,286, and Northbrook appeals. We reverse and remand.

## I. FACTS

Northbrook entered into a contract of insurance with Pre-Fab. Under the contract, the coverage began on July 1, 1984, and continued until July 1, 1985. Pre-Fab was engaged in the trucking business and employed various drivers and other employees in conjunction with its business.

The policies Northbrook issued to Pre-Fab included a business auto policy covering truckers' liability, a business auto policy (which provided coverage for physical damage to those vehicles either owned by Pre-Fab or under permanent lease to them), a commercial inland marine policy, a general automobile liability policy covering trailers and semitrailers, and various workers' compensation and employer's liability policies. The policies provided workers' compensation coverage in multiple States by endorsement with variable rates per State.

Northbrook issued Pre-Fab a retrospective premium endorsement, one-year plan, multiple lines, because Pre-Fab chose to have the cost of insurance rated retrospectively. The endorsement explained how the retrospective premium would be determined. The retrospective premium endorsement was on a standardized form, copyrighted by

the National Council on Compensation Insurance and used with its permission.

Due to the high frequency and the severity of accidents, the premium was increased on March 1, 1985, through the balance of the policy term. No other changes occurred in the coverages nor were any other policies issued.

Pre-Fab paid the standard premium owed to Northbrook. A dispute arose over the amount of the premium Pre-Fab owed to Northbrook that was generated pursuant to the retrospective rating plan endorsement. On November 3, 1986, Pre-Fab sent a check to Northbrook for $94,124.81, the amount of premium that Pre-Fab claimed it owed Northbrook under the retrospective rating plan endorsement. Northbrook returned the check and informed Pre-Fab that it owed Northbrook more than $400,000.

Pre-Fab filed a multicount complaint and, later, a first-amended complaint against Northbrook. Northbrook filed an answer with affirmative defenses and a counterclaim. Later, Northbrook filed an amended counterclaim to recover its premium due on the retrospective rating plan endorsement.

Both parties agreed that the contract was unambiguous (but each had its own interpretation) and that a question of law was presented to the circuit court as to the retrospective premium endorsement. The dispute involved the method and manner of calculating the retrospective premium pursuant to the endorsement.

The circuit court agreed with the parties that the contract language was unambiguous. It held that the contract called "for the *combination* of the multiple lines *after* figuring basic premium percentages, tax multipliers and *the minimum and maximum retrospective premium for the differing lines of insurance.*" (Emphasis added.) As previously noted, this interpretation concurred with Pre-Fab's formula regarding computation of the retrospective premium. The trial court granted Pre-Fab's request for declaratory relief, held that Pre-Fab owed Northbrook $99,286, and denied Northbrook's amended counterclaim. This appeal followed.

## II. ANALYSIS

### A. *General Principles of Construction and the Standard of Review*

■ General principles regarding the construction and interpretation of insurance contracts do not differ from those controlling other contracts. (*Zitnik v. Burik* (1946), 395 Ill. 182, 186, 69 N.E.2d 888,

890.) The Illinois Supreme Court has written that "[t]he construction of a contract and the determination of the rights and obligations of the parties to the contract are questions of law, the determination of which rests exclusively with the court." (*Zurich Insurance Co. v. Raymark Industries, Inc.* (1987), 118 Ill. 2d 23, 58, 514 N.E.2d 150, 166; see also *Oldweiler v. Peoples Bank* (1987), 161 Ill. App. 3d 317, 320, 514 N.E.2d 541, 543.) An insurance contract must be interpreted from an examination of the complete document and not an isolated part. (*Zurich*, 118 Ill. 2d at 50, 514 N.E.2d at 162.) When evidence before the trial court is entirely documentary, the appellate court is not bound by the trial court's finding, and may independently construe the document unrestrained by the trial court's determination. *Oldweiler*, 161 Ill. App. 3d at 320, 514 N.E.2d at 543.

The primary objective in construing a contract is to effectuate the parties' intentions when entering the agreement. Absent ambiguity, the intention of the parties must be gathered from the language used in the contract, not from a party's construction of that language. *Lenzi v. Morkin* (1984), 103 Ill. 2d 290, 293, 469 N.E.2d 178, 179; *Board of Governors of State Colleges & Universities v. Illinois Educational Labor Relations Board* (1988), 170 Ill. App. 3d 463, 470, 524 N.E.2d 758, 761.

A contract is ambiguous if it is subject to more than one reasonable interpretation. The existence of an ambiguity in a contract must be determined as a question of law by the court. (*Quake Construction, Inc. v. American Airlines, Inc.* (1990), 141 Ill. 2d 281, 288, 565 N.E.2d 990, 994.) If the terms of an alleged contract are ambiguous or capable of more than one interpretation, parol evidence is admissible to ascertain the parties' intent. *Quake Construction*, 141 Ill. 2d at 288, 565 N.E.2d at 994.

A document is not ambiguous merely because the parties fail to agree upon its meaning. (*First National Bank v. Country Mutual Insurance Co.* (1988), 175 Ill. App. 3d 860, 866, 530 N.E.2d 521, 525.) Insurance contracts must be construed according to the sense and meaning of the terms which the parties have used. *Zitnik*, 395 Ill. at 186, 60 N.E.2d at 890.

### B. *Retrospective Premiums*

■ The issue in this case involves the calculation of a retrospective premium in the standard form insurance policy between Northbrook and Pre-Fab. A retrospective premium endorsement provides flexible premiums based on the insured's loss experience. A retrospective premium enables an insurer to determine its incurred losses with

finality and to adjust the final premium in relation to the loss experience. *Aetna Life & Casualty Co. v. Anfinsen Plastic Molding Co.* (1977), 47 Ill. App. 3d 146, 361 N.E.2d 848.

The title of the retrospective premium endorsement in the present case states that it includes "multiple lines" of insurance. According to the endorsement, it applies to "any policy listed in the schedule." The policies listed in the schedule are workers' compensation, employer's liability, automobile liability coverage, and general liability coverage. The calculation of the retrospective premium is explained within the endorsement.

The amount of the retrospective premium depends on five standard elements and two elective elements. The five standard elements are the standard premium, the basic premium, incurred losses, converted losses, and taxes. The "standard premium" is the premium that Northbrook would charge during the policy period for the insurance, subject to the retrospective plan if Pre-Fab had not chosen the retrospective premium. Pre-Fab chose the application of two elective elements, the "excess loss" premium and the "retrospective development" premium. The "maximum retrospective premium factor" is 130% of the standard premium and the "minimum retrospective premium factor" is 56% of the standard premium.

The endorsement provided as follows:

"C. Retrospective Premium Formula.

Insurance policies listed in the Schedule will be combined with this policy to calculate the retrospective premium. If the policies provide insurance for more than one insured, the retrospective premium will be determined for all insureds combined, not separately for each insured.

1. Retrospective premium is the sum of basic premium, converted losses, and taxes, plus the excess loss premium and retrospective development premium elective elements if you chose them.

2. The retrospective premium will not be less than the minimum nor more than the maximum retrospective premium. The minimum and maximum retrospective premiums are determined by applying the minimum and maximum premium factors shown in the Schedule to the standard premium.

3. If this endorsement applies to more than one policy or state, the standard premium will be the sum of the standard premiums for each policy and state."

## C. *The Parties' Contrasting Applications of the Formula*

Pre-Fab comes to its figure of $99,286 by calculating the minimum and maximum retrospective premium amounts separately for each line of insurance and then combining them to reach the final minimum and maximum retrospective premiums. In essence, the minimum and maximum premium factors are applied to the standard premium of each line of insurance and then they are combined. The trial court followed Pre-Fab's methodology.

Northbrook argues that Pre-Fab's contention—which the trial court accepted—contravenes the "plain and concise language" contained in the endorsement. Northbrook maintains that the retrospective premium endorsement does not indicate that there are to be three separate calculations—one for each line of insurance—of the minimum and maximum retrospective premiums. According to Northbrook, the retrospective premium should be determined from a single standard premium which was calculated from all of the different lines of the insurance. Under this methodology, Pre-Fab would owe Northbrook the amount of $386,167.

The difference between the parties' methodologies is the *timing* of the calculation of the minimum and maximum retrospective premiums. Pre-Fab contends that the minimum and maximum retrospective premiums should be applied to the standard premium, and then calculated from the earned retrospective premium by line of insurance, and *then* combined to determine the final retrospective premium. If, for example, in the general liability line the losses were greater than 130% of the standard premium for that line, and the losses for each of the other two lines were less than 56% of the standard premium for each line, the retrospective premium would be the sum of the 130% of the standard premium general liability and 56% of the standard premium for the other two lines.

Northbrook contends that the minimum and maximum retrospective premiums should be calculated after the standard premiums from all lines of insurance have been calculated and combined. That is, the actual losses for all lines would be combined and if that amount exceeded 130% of the standard premium of all the lines combined, the retrospective premium would be 130% of that standard premium. If the actual losses were less than 56% of the standard premium of all the lines combined, the retrospective premium would be 56% of that standard premium.

Here, the timing of the calculation of the minimum and maximum retrospective premiums is important because for some lines of insurance the earned retrospective premium is less than the maximum retrospective premium. However, the total earned retrospective premium, not limited by the maximum retrospective premium calculated by line of insurance, exceeds the maximum retrospective premium as applied to the final standard premium. Consequently, the calculations under the parties' methodologies differ by over $280,000.

The parties' computation sheets are appended. A comparison of them indicates that Pre-Fab would apply the minimum and maximum retrospective premiums to the standard premium of each line of insurance and Northbrook would apply the minimum and maximum retrospective premiums to the final standard premium. Northbrook's computation worksheet differs from Pre-Fab's in that Northbrook inserts a "total" column for each element and its maximum retrospective premium is calculated as 130% of the total standard premium of all the lines of insurance combined. The total standard premium is $1,273,891, and the maximum retrospective premium calculated as 130% of the standard premium is $1,656,058. Pre-Fab's calculation of the retrospective premium is calculated as 130% of the standard premium for each line of insurance, hence three separate figures are calculated for each time period and then combined. Similarly, Northbrook's minimum retrospective premium is calculated as 56% of the total standard premium for all lines of insurance combined, resulting in a single figure of $713,379. By contrast, Pre-Fab's calculation is again by separate lines with three resultant figures for each time period which are then combined.

The circuit court, following Pre-Fab's methodology, emphasized that the language of the retrospective endorsement formula contained a plural subject ("premiums") and a plural verb ("are") in the following sentence: "The minimum and maximum retrospective premiums *are* determined by applying the minimum and maximum premium factors shown in the Schedule to the standard premium." (Emphasis added.) The circuit court held that the plural subject and verb indicated that there must be more than one minimum and maximum "premium." Accordingly, it held that the minimum and maximum retrospective premiums are calculated for each line of insurance and then combined.

Northbrook contends, and we agree, that the word "are" is appropriately used in referring to two different premiums: the minimum and maximum. The verb refers to minimum and maximum, not to separate retrospective premium computations.

## D. *The Proper Application of the Formula*

We conclude that the retrospective premium endorsement in the present case is unambiguous, and we also conclude that the contract requires calculation consistent with Northbrook's methodology. Section C(2) of the retrospective premium reads in pertinent part, "the minimum and maximum retrospective premiums are determined by applying the minimum and maximum premium factors shown in the Schedule *to the standard premium.*" (Emphasis added.) Section C(3) correspondingly reads: "If this endorsement applies to more than one policy or state, *the standard premium will be the sum of the standard premiums for each policy* and state" (emphasis added). On the face of this endorsement, the "standard premium" to which the minimum and maximum premium factors are to be applied is defined as the *sum* of the standard premiums for each policy. Accordingly, we hold that the minimum and maximum retrospective premium factors are to be applied *after* one final standard premium is calculated from all the lines of insurance. This corresponds with Northbrook's contentions; it also permits the language of section C(3) to be given some effect.

In essence, through the endorsement, Northbrook is pooling its bottom line risk from all the lines of insurance by applying the minimum and maximum retrospective premiums to one total standard premium. This permits the insured to have the benefit of drawing on those lines wherein its actual losses were less than those reflected in the standard premium. It also permits the insured to compensate for excessive losses in one or more other lines, but not to claim a windfall via the formula advanced by Pre-Fab.

To hold otherwise could lead to perverse results. For example, if there is a retrospective endorsement covering three lines of insurance, each with a separate standard premium of $100,000, and if one line of insurance suffers unexpectedly high losses of $500,000 and the other two lines each suffer losses of $50,000, by applying the minimum and maximum retrospective premium factors of 56% and 130% respectively from the present case to each line of insurance as Pre-Fab argues, the retrospective premium would be *less* than the standard premium. That is, 130% of the $100,000 standard premium for the line of insurance that suffered high losses is $130,000 and the 56% to be applied to the $100,000 for the other two lines of insurance which suffered $50,000 in losses respectively would be $56,000 per line. Consequently, the retrospective premium of $242,000 would be *less* than the $300,000 standard premium for the three lines of insur-

ance even though the actual losses were $600,000. Under the methodology the court adopts today, the retrospective premium would be $390,000, which is 130% of the $300,000 standard premium. This retrospective premium reflects the enormous total losses of $600,000. The insured would still be protected under this methodology as it would pay only a total of $390,000, even though its actual total losses were $600,000. However, the $390,000 would reflect a true maximum retrospective premium which would be appropriate in a situation where the actual losses were twice the standard premium.

A similar situation existed in the present case. But for the 130% maximum retrospective premium, the retrospective premium owed by Pre-Fab to Northbrook based on the actual losses would have been approximately $1,900,000. However, because the maximum retrospective premium that Pre-Fab must pay is 130% of the standard premium of $1,273,891, the maximum retrospective premium is $1,656,058. As Pre-Fab has already paid the standard premium of $1,273,891, it owes Northbrook $382,167.

Nothing we have said here should be interpreted as discouraging the insurance industry from developing policy provisions written in more clear and understandable language. The policy provisions at issue in this case tend to confirm the public's worst fears that insurance policy English is to English as military music is to music. If insurance companies would put some initial effort in drafting such policies so that they would truly and realistically explain their coverage (perhaps even using examples to show what the coverage would be in certain situations) instead of seeking to be protectively opaque in meaning—or so the drafters think—then those companies would avoid the uncertainty and expense of litigation like this case.

### III. Conclusion

For the reasons stated, we reverse the judgment of the circuit court and direct the entry of judgment in favor of Northbrook for $382,167.

Reversed and remanded with directions.

KNECHT and LUND, JJ., concur.

APPENDIX A

## PREFAB TRANSIT COMPANY'S COMPUTATION

| | 7/1/84 to 3/1/85 | | | | 3/1/85 to 7/1/85 | | | | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| | TOTAL | WC | AL | GL | TOTAL | WC | AL | GL | |
| 1. Standard Premium | | 486,628 | 256,855 | 319 | | 243,314 | 286,616 | 159 | |
| 2. Basic Premium % | | 14.4 | 6.0 | 6.4 | | 14.4 | 6.0 | 6.4 | |
| 3. Basic Premium | | 70,074 | 15,411 | 20 | | 35,037 | 17,197 | 10 | |
| 4. Incurred Losses | | 250,502 | 651,116 | 0 | | 279,886 | 261,874 | 0 | |
| 5. Loss Conversion Factor | | 1.09 | 1.09 | 1.09 | | 1.09 | 1.09 | 1.09 | |
| 6. Converted Losses | | 273,047 | 709,716 | 0 | | 305,076 | 285,443 | 0 | |
| 7. Excess Premium Factor | | .099 | 0 | 0 | | .099 | 0 | | |
| 8. Excess Loss Premium | | 52,512 | | | | 26,256 | | | |
| 9. Tax Multiplier | | 1.038 | 1.031 | 1.031 | | 1.038 | 1.031 | 1.031 | |
| 10. Indicated Retro Premium | | 410,667 | 747,606 | 21 | | 380,291 | 312,022 | 10 | |
| 11. Maximum Retro Premium @ 130% | | 632,616 | 333,912 | 414 | | 316,308 | 372,600 | 207 | |
| 12. Minimum Retro Premium @ 56% | | 272,511 | 143,838 | 179 | | 136,255 | 160,505 | 89 | |
| 13. Earned Retro Premium | | 410,667 | 333,912 | 179 | | 316,308 | 312,022 | 89 | |
| 14. Premium Previously Charged | | 486,628 | 256,855 | 312 | | 243,314 | 286,616 | 159 | |
| 15. Addl. (+) or Return (-) | 956 | -75,961 | 77,057 | -142 | 98,330 | 72,994 | 25,406 | -70 | 99,286 |

## APPENDIX B

NORTHBROOK'S COMPUTATION

| | 7/1/84 to 3/1/85 | | | | 3/1/85 to 7/1/85 | | | | Total |
|---|---|---|---|---|---|---|---|---|---|
| | Total | WC | AL | GL | Total | WC | AL | GL | Total |
| 1. Standard Premium | 743,802 | 486,628 | 256,855 | 319 | 530,089 | 243,314 | 286,616 | 159 | 1,273,891 |
| 2. Basic Premium % | | 14.4 | 6.0 | 6.4 | | 14.4 | 6.0 | 6.4 | |
| 3. Basic Premium | 85,505 | 70,074 | 15,411 | 20 | 52,244 | 35,037 | 17,197 | 10 | 137,749 |
| 4. Incurred Losses | 901,618 | 250,502 | 651,116 | 0 | 541,760 | 279,886 | 261,874 | 0 | 1,443,378 |
| 5. Loss Conversion Factor | | 1.09 | 1.09 | 1.09 | | 1.09 | 1.09 | 1.09 | |
| 6. Converted Losses | 982,763 | 273,047 | 709,716 | 0 | 590,519 | 305,076 | 285,443 | 0 | 1,573,282 |
| 7. Excess Loss Prev. Factor | | .099 | 0 | | | .099 | 0 | | |
| 8. Excess Loss Premium | 52,512 | 52,512 | 0 | | 26,256 | 26,256 | 0 | | |
| 9. Tax Multiplier | | 1.038 | 1.031 | 1.031 | | 1.038 | 1.031 | 1.031 | |
| 10. Indicated Retro Premium | 1,158,294 | 410,667 | 747,606 | 21 | 692,323 | 380,291 | 312,022 | 10 | 1,850,617 |
| 11. Maximum Retro Premium @ 130% | 966,943 | | | | 689,115 | | | | 1,656,058 |
| 12. Minimum Retro Premium @ 56% | 416,529 | | | | 296,850 | | | | 713,379 |
| 13. Earned Retro Premium | 966,943 | 342,824 | 624,101 | 18 | 689,115 | 378,529 | 310,577 | 10 | 1,656,058 |
| 14. Premium Previously Charged | 743,802 | 486,628 | 256,855 | 319 | 530,089 | 243,314 | 286,616 | 159 | 1,273,891 |
| 15. Addl. (+) or Return (-) | 223,141 | -143,804 | 367,246 | -301 | 159,027 | 135,215 | 23,961 | -149 | 382,167 |