LARRY LITTLE *et al.*, Plaintiffs-Appellees, v. TUSCOLA STONE COMPANY, Defendant-Appellant.

Fourth District   No. 4—91—0923

Opinion filed September 30, 1992.

Brian L. McPheters, of Hatch, Blockman, McPheters, Fehrenbacher & Lyke, of Champaign, for appellant.

J. Michael O'Byrne, of Reno, O'Byrne & Kepley, P.C., of Champaign, for appellees.

JUSTICE COOK delivered the opinion of the court:

Plaintiffs, Larry Little and Joan Little (the Littles), brought this action for declaratory relief, an injunction, and an accounting to recover damages occasioned by the alleged conversion by defendant, Tuscola Stone Company (Tuscola), of overburden from a quarry operated by defendant on plaintiffs' land. The trial court granted plaintiffs' motion for directed verdict on the issue of liability at the close of all the evidence. The jury returned a verdict for compensatory damages of $44,455.80 upon which the court entered judgment, and from which this appeal is taken. On appeal, Tuscola argues (1) the trial court erred in granting a directed verdict in favor of the Littles, (2) the trial court erred in two of its evidentiary rulings, and (3) the jury verdict for $44,455.80 was excessive.

On February 10, 1970, the Littles entered into an agreement entitled "LIMESTONE, DOLOMITE, STONE, SAND, AND GRAVEL AGREEMENT AND LEASE" with Tuscola's predecessors in interest

for the opening of a quarry in Douglas County. The quarry was opened and subsequently Tuscola became assignee of the lease.

Prior to 1985, Larry Little was the only individual who handled the sale of dirt, also known as overburden, from the quarry. This dirt covering the limestone was 35 to 40 feet deep and had to be removed to quarry the limestone. Generally, a buyer would contact Little to purchase the dirt, pay the price set by Little, and load his own dirt for hauling. Tuscola received no proceeds from the sale of the dirt. In 1985, after the arrival of a new manager, Tuscola began selling the dirt exclusively and at the time of this trial had sold 49,342 units of dirt from the quarry. A "unit" is equal to either the weight of one ton or the volume of one cubic yard. Tuscola received $26,397.24 in total revenue for the dirt and paid the Littles $4,888.20 in royalties. When the Littles learned of this practice they immediately objected, and eventually brought this action alleging conversion of the dirt by Tuscola, claiming that the dirt belonged to them and nothing in the lease agreement gave Tuscola the right to sell the dirt from the quarry.

On appeal, Tuscola first claims that the court erred in granting plaintiffs' motion for a directed verdict. Tuscola contends that when properly construed the lease agreement gives the lessee the right to remove and sell the dirt or otherwise dispose of it without any obligation to the plaintiffs to account for the same or to pay royalties thereon. Tuscola's alternative theory is that the lease agreement gives it the right to quarry or otherwise remove and sell the dirt if it pays a royalty to the Littles.

The question before this court is one of contract construction. Ambiguous contracts, including leases, are those that are capable of more than one interpretation. (*Quake Construction, Inc. v. American Airlines, Inc.* (1990), 141 Ill. 2d 281, 288, 565 N.E.2d 990, 994; *First National Bank v. Country Mutual Insurance Co.* (1988), 175 Ill. App. 3d 860, 866, 530 N.E.2d 521, 525; *Harris Trust & Savings Bank v. La Salle National Bank* (1990), 208 Ill. App. 3d 447, 453, 567 N.E.2d 408, 412.) In such a case, extrinsic evidence is admissible to ascertain the parties' intent. (*Quake Construction*, 141 Ill. 2d at 288, 565 N.E.2d at 994.) However, a document is not ambiguous merely because the parties fail to agree upon its meaning. (*First National Bank*, 175 Ill. App. 3d at 866, 530 N.E.2d at 525.) In determining the intent of an unambiguous instrument, the court must consider the entire document giving words their plain and ordinary meaning. (*Oldweiler v. Peoples Bank* (1987), 161 Ill. App. 3d 317, 321, 514 N.E.2d 541, 543-44.) When interpreting an unambiguous agreement, construction of the agreement is to be decided by the court as a mat-

ter of law. The appellate court is not bound by the trial court's findings, but may independently construe the instrument unrestrained by the trial court's determination. *Oldweiler*, 161 Ill. App. 3d at 320, 514 N.E.2d at 543.

The lease reads, in pertinent part, as follows:

"Lessor *** does hereby grant, lease, let and convey to Lessee, the exclusive right of entering into and upon lands hereinafter described, for the purposes of mining, quarrying, or otherwise removing limestone, dolomite, stone, gravel, sand, or a combination thereof, and any part or portion of any earth, rock or other strata that may be attached to, combined with, constituting a part of, or anything that might be in the way of, said limestone, dolomite, stone, sand, or a combination thereof, that may be or shall be removed from said lands ***."

The parties do not dispute that the lease allows Tuscola to "remove" the dirt from the ground in its attempt to reach the limestone, dolomite, stone, sand, or a combination thereof. However, the parties differ regarding the meaning of "removal" of the dirt. Tuscola contends the lease allows it to remove the dirt and sell it. The Littles contend that Tuscola may only remove and reposition the dirt from the top of the limestone. According to the Littles, the dirt belongs to them and may not be sold by Tuscola.

■■ We find this lease to be unambiguous, and consequently we hold that no evidence need have been taken by the circuit court. On its face the lease grants Tuscola only the right to remove the dirt, *i.e.*, relocate it on the Littles' property, in order for it to reach the limestone, dolomite, stone, gravel, sand, or combination thereof. The lease also gives Tuscola the right to remove limestone, but that right is certainly not a right to keep it, use it, or own it without paying for it. The only right to deal with removed limestone is set out in the subsequent provision dealing with royalties. This construction is consistent with the construction given the lease by the parties. During the first 15 years of the lease (from 1970 to 1985), only Larry Little sold dirt derived from his property. We find that because the lease did not give Tuscola the right to remove and *use* the overburden from the Littles' land, the lease shows an intent to deny that right to Tuscola. (*Grove v. Winter* (1990), 197 Ill. App. 3d 406, 409, 554 N.E.2d 722, 724.) The parties may have viewed the overburden as a nuisance, something to be disposed of to get to the valuable limestone underneath. Still, nothing in the lease gives Tuscola any right to sell the dirt and retain the proceeds.

Tuscola's alternative theory, that it can sell the dirt from the quarry as long as it pays a royalty to the Littles, arises out of its interpretation of the royalty provision within the lease. The royalty provision reads, in pertinent part, as follows:

> "Lessee does hereby agree to pay to Lessor for all useable limestone, dolomite, stone, gravel, sand or combination thereof, 5¢ per ton royalty for such material actually sold and removed from the premises, said royalty *** shall, except as provided below, constitute the entire compensation and rentals due the Lessor for the use of said premises and material removed therefrom ***."

Tuscola maintains that the royalty provision indicates that it may remove *any* material from the premises provided it pays a royalty, and that it did pay a royalty for the dirt ($4,888.20). The Littles contend that the royalty payments cover only the specified materials, the limestone, dolomite, stone, gravel, and sand. We hold that the royalty provision means what it says. As written, the royalty provision applies only to "limestone, dolomite, stone, gravel, sand or combination thereof." Consequently, we hold that the royalty provision does not give Tuscola the right to sell the dirt.

Tuscola next argues that the trial court erred in several of its evidentiary rulings. Although a contract or lease may appear unambiguous on its face, a trial court may still admit relevant evidence regarding the existence of an ambiguity at the time of execution of the contract or lease. *URS Corp. v. Ash* (1981), 101 Ill. App. 3d 229, 235, 427 N.E.2d 1295, 1300.

■ The first evidentiary issue raised by Tuscola is that the trial court erred in limiting its direct examination of Raymond Lee, who represented the Littles in the negotiation of the lease. At trial Lee affirmed that the language of the lease reflected the intent of the parties. He testified that the "language used in the lease was to be all inclusive" and that there would be a royalty paid on "whatever they [lessee] removed from the quarry." Tuscola inquired as to Lee's belief on the Littles' intent at the time of execution of the lease, but the trial court sustained the Littles' objections. On appeal, Tuscola argues that Lee's testimony would have shown a conflict between the Littles' intent at the time of execution of the lease and the description of that intent proffered by the Littles at trial. However, no offer of proof was made.

Just as the objection is the key to saving for review any error in admitting evidence, the offer of proof is the key to saving error in excluding evidence. (*Miller v. Chicago Transit Authority* (1966), 78 Ill.

App. 2d 375, 383, 223 N.E.2d 323, 327.) The purpose of the offer of proof is to disclose the nature of the offered evidence to which the objection is interposed, *for the information of the trial judge and opposing counsel,* and to enable the reviewing court to determine whether the exclusion was erroneous and harmful. *Wright v. Stokes* (1988), 167 Ill. App. 3d 887, 891, 522 N.E.2d 308, 311; M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 103.7, at 19 (5th ed. 1990).

Here, there is nothing in the record that indicates that Lee would have testified that the Littles intended to transfer ownership of the dirt to Tuscola, and Tuscola did not make an offer of proof indicating that Lee would testify the Littles had such an intent. Absent an offer of proof, we cannot speculate as to what Lee would have testified. Furthermore, we cannot say that the trial court abused its discretion or that Tuscola was prejudiced by the exclusion of Lee's testimony regarding the Littles' intent; Lee was allowed to testify that the language of the lease contained what he believed to be the intent of the parties and as to what he believed that language to mean.

■ Next, Tuscola contends that the trial court erred in denying admission into evidence Tuscola's exhibit No. 3. The trial court admitted into evidence Tuscola's exhibit Nos. 1 and 2, records and tables kept in the ordinary course of business relating to the costs involved in selling the dirt. The trial court, however, refused to admit exhibit No. 3, which was a table summarizing exhibit Nos. 1 and 2. Two of Tuscola's witnesses, Kyle Johnson and Mark Stephen Walsh, testified at length regarding the contents of exhibit Nos. 1 and 2.

When original documents are voluminous and cannot be examined to extract the fact to be proved, any competent witnesses, such as Johnson and Walsh in the present case, who have seen the originals may testify to the facts, provided they are capable of being determined by calculation. (*In re Marriage of Westcott* (1987), 163 Ill. App. 3d 168, 176, 516 N.E.2d 566, 571; *Landmark Structures, Inc. v. F.E. Holmes & Sons Construction Co.* (1990), 195 Ill. App. 3d 1036, 1051, 552 N.E.2d 1336, 1345.) The admission of exhibits into evidence is largely within the discretion of the trial court; furthermore, the admission of exhibits into evidence which contain a summary of testimony given is within the discretion of the trial court. (*Landmark Structures,* 195 Ill. App. 3d at 1051, 552 N.E.2d at 1345; see *People v. Crawford Distributing Co.* (1978), 65 Ill. App. 3d 790, 798, 382 N.E.2d 1223, 1229, *aff'd* (1979), 78 Ill. 2d 70, 397 N.E.2d 1362.) The exclusion of demonstrative evidence which is largely cumulative is within the discretion of the trial court. M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 401.7, at 138 (5th ed. 1990).

The exclusion of exhibit No. 3 was within the trial court's discretion, especially in light of the facts that exhibit No. 3 was merely a summary of exhibit Nos. 1 and 2 (which were already admitted into evidence); exhibit No. 3 was prepared in anticipation of trial (exhibit Nos. 1 and 2 were prepared in the ordinary course of business); and two witnesses testified regarding the contents of exhibit Nos. 1 and 2. To admit exhibit No. 3 would have been cumulative and may have influenced the jury to give the evidence contained therein undue weight.

■ Tuscola also asserts that it was error for the trial court to exclude Tuscola's exhibit No. 5, which listed the royalties paid to the Littles for the limestone from the quarry. The trial court found that the royalties for the limestone were not a relevant consideration in this case. We agree. The instruction the jury received clearly directed it to determine the value of the *dirt* removed. The only issue before the jury was as to the damages due the Littles for the dirt wrongfully removed from the premises and evidence of the royalties paid on the dirt was admitted. Evidence regarding the royalties paid on the *limestone*, as contained in exhibit No. 5, was not relevant as to the issue of damages. Consequently, it was within the trial court's discretion to exclude exhibit No. 5.

■ Finally, Tuscola contends that the jury verdict of $44,453.80 was excessive. Tuscola's jury instruction regarding damages, which was given, provided in pertinent part as follows: "Plaintiffs are entitled to damages measured by the value of the dirt you find the Defendant has sold, less a credit to Defendant for the reasonable costs and expenses of selling said dirt."

Generally, jury determinations can be set aside only when a court of review, or a trial court upon proper motion, is clearly satisfied that they were occasioned by passion or prejudice or found to be wholly unwarranted from the manifest weight of the evidence. (*Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 623, 126 N.E.2d 836, 841.) A verdict will not be set aside merely because the jury could have found differently or because judges find that other conclusions would be more reasonable. *Kahn,* 5 Ill. 2d at 623, 126 N.E.2d at 841.

The parties stipulated that 49,342 units of dirt had been sold from the quarry by Tuscola. Tuscola's exhibit No. 1, its price list, listed "fill dirt" at $1 per ton. However, Tuscola's treasurer and comptroller testified that the total sales of the dirt in the five years in question amounted to $26,397.24, indicating a price less than $1 per ton. Tuscola's exhibit Nos. 1 and 2 indicated that the costs of preparing and selling the dirt was $16,430.66, leaving a net on dirt sales to Tuscola for the five years in question of $9,966.58. The evidence showed that

when Larry Little was exclusively selling the dirt the prices ranged from $1 to $2 per ton. Testimony also established that prior to 1985, the Littles incurred no expenses in selling the dirt as the purchaser was required to load his or her own dirt. In light of the evidence regarding the value of the dirt and the reasonable costs and expenses of selling said dirt, we hold that the jury verdict in favor of the Littles for $44,453.80 was reasonably supported by the facts.

For all of the above reasons, the judgment of the circuit court is affirmed.

Affirmed.

STEIGMANN and McCULLOUGH, JJ., concur.