The AMERICAN INSURANCE COMPANY, a corporation, Plaintiff, Appellee, and Cross-Appellant,

v.

MIDWEST MOTOR EXPRESS, INC., Defendant, Appellant, and Cross-Appellee.

Civil No. 950411.

Supreme Court of North Dakota.

Oct. 1, 1996.

R. Richard Maixner (argued), and Orell D. Schmitz (appearance), of Schmitz, Moench & Schmidt, Bismarck, for plaintiff, appellee, and cross-appellant.

Randall J. Bakke (argued), of Smith Bakke Hovland & Oppegard, Bismarck, for defendant, appellant, and cross-appellee.

MARING, Justice.

Midwest Motor Express, Inc. [Midwest] appeals from a memorandum decision dismissing its counterclaim against the American Insurance Company [American] for excess retrospective premiums it allegedly paid American because, the trial court found, the counterclaim was barred by the statute of limitations, and from a later memorandum decision denying Midwest's post-trial motion. American cross-appeals from the memorandum decision dismissing its complaint against Midwest because, the trial court found, American failed to prove its claim for an alleged deficiency in retrospective premiums paid by Midwest. We affirm the dismissal of both American's complaint and Midwest's counterclaim.[1]

Midwest is a Bismarck-based transport company with drivers and other employees working in Minnesota. Minnesota, unlike North Dakota, has a private workers compensation insurance system. Midwest purchased its Minnesota workers compensation insurance coverage from American for the years 1981 through 1991. The workers compensation insurance policy involved in this case provided coverage for the 1981 calendar year only and included a retrospective premium endorsement. Midwest paid an estimated annual premium for each one-year policy. But under the retrospective premium endorsement, the premium was adjusted either upward or downward during the ensuing years depending on the workers compensation payments made to workers injured during the one-year policy period. This resulted in either a yearly payment being made by Midwest to American or refunds being made by American to Midwest. In addition, when Midwest owed premiums on another year's workers compensation policy, but American owed Midwest money under the retrospective premium adjustment on the 1981 policy, American would issue a credit for that amount, thus reducing the total amount owed by Midwest.

After making retrospective premium adjustments in July of 1989, 1990, and 1991, American claimed Midwest owed, after offsets, $75,766 on the 1981 policy. Midwest

1. Both parties have appealed from the trial court's memorandum decisions. A memorandum decision is generally not appealable under N.D.C.C. § 28-27-02. *See Zueger v. Carlson*, 542 N.W.2d 92, 94 n. 2 (N.D.1996). However, an appeal may be taken from a memorandum decision if the record also contains a final order or judgment which is consistent with the memorandum decision, *see Ehli v. North Dakota Workers Compensation Bureau*, 447 N.W.2d 313, 314–315 (N.D.1989), or if the memorandum decision demonstrates it was intended to constitute the final order of the court. *See Midwest Federal Sav. Bank v. Symington*, 393 N.W.2d 753, 754 (N.D.1986). Although the record does not contain a formal order or judgment consistent with the memorandum decisions, the memorandum decisions indicate they were intended to be final orders of the court.

The first memorandum decision "dismiss[es]" both American's complaint and Midwest's counterclaim and further orders that no costs be awarded to either party. There is no direction for preparation of a "final" judgment or order. Likewise, the second memorandum decision rejects each ground of Midwest's post-trial motion and does not direct preparation of a formal judgment or order. We conclude this court has jurisdiction to consider the merits of the parties' appeals.

did not pay, and in August 1993, American brought this lawsuit to collect the retrospective premium from Midwest. Midwest counterclaimed, asserting that it was entitled to an offset or retrospective premium reimbursement from American of $88,476 based on a revised final audit conducted in 1982 or 1983 and which "cleared [American's] books" in July 1984. American asserted Midwest's counterclaim was barred by the statute of limitations.

Following a bench trial, the court dismissed both American's complaint and Midwest's counterclaim. The court ruled that, because American had destroyed its audit records under the company's record retention and destruction schedule, American had "failed to prove the basis for the charges claimed and hence its claim has not been proved by the greater weight of the evidence." The trial court also ruled that, because the amount Midwest claimed it was owed became due in 1982, Midwest's counterclaim was barred by the six-year statute of limitations under N.D.C.C. § 28–01–16(1). The court reasoned that the account between the parties created by the periodic retrospective premium adjustments was a "simple open account" rather than a "mutual open, and current" account within the meaning of N.D.C.C. § 28–01–37, under which Midwest's claim for relief would be deemed to have accrued "from the time of the last item proved in the account on either side."

Midwest moved to amend the court's findings under N.D.R.Civ.P. 52(b), to alter or amend the judgment under N.D.R.Civ.P. 59, and for relief from the judgment based on fraud, misrepresentation, or other misconduct of an adverse party under N.D.R.Civ.P. 60. Midwest argued that its counterclaim was not time barred because its breach of contract action did not accrue under N.D.C.C. § 28–01–16(1) until American brought this lawsuit. Midwest also asserted that principles of equitable estoppel prevented application of the statute of limitations to bar its counterclaim.

The trial court denied Midwest's motion. The court ruled that the statute of limitations applied because Midwest "discovered its claim in 1984, or in the exercise of reasonable

diligence should have discovered its claim no later than 1986." The trial court found American did not "mislead" Midwest and there was "no proof" of equitable estoppel. These appeals followed.

## I

■ In its cross-appeal, American asserts the trial court erred in concluding that the foundational requirements had not been met under N.D.R.Ev. 803(6) for the introduction of trial exhibits documenting the periodic retrospective premium adjustments. Most of the documents are "retrospective premium reports" American prepared to send to Midwest which stated the amounts Midwest's account was being credited or debited for premiums owed for a certain time period. Others summarize the figures for various years. Contrary to American's argument, the record shows that the trial court admitted the documents into evidence but simply found them, at the time of its decision, insufficient from an evidentiary standpoint to support American's claim against Midwest.

Although the trial court stated in its memorandum decision that the foundational requirements for the exhibits had not been met, this appears to have been an alternative ruling because the court considered the documents and stated they "prove[d] nothing," and continued to analyze the other evidence presented before concluding American had failed to establish its claim by a preponderance of the evidence. Moreover, the court explained during trial:

"I'll tell you what I'll do, I will allow it into evidence, but the weight it is going to get depends on how you support the figures. This being a court case I don't want to get real technical with the rules of evidence. If this were a jury case, I would not let this into evidence."

■ Because the trial court allowed the document into evidence, the proper inquiry on appeal is not whether the foundational requirements for admitting business records under N.D.R.Ev. 803(6) were satisfied, but whether the court's finding that American failed to prove by a preponderance of the evidence the amount allegedly owed by Mid-

west is clearly erroneous. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if this court is left with a definite and firm conviction that a mistake has been made. *Sargent County Bank v. Wentworth*, 547 N.W.2d 753, 758 (N.D.1996).

Midwest challenged the method used by American in calculating the retrospective premiums from the outset of this lawsuit. Although the documents contain various figures for the relevant years, they do not explain how the amounts were calculated, or what data or formula was used to arrive at the amounts. American's witnesses had no knowledge of how the premiums were calculated or what formula was used. Although one witness testified about the method American used to prepare the records, the records were only summaries of other records which might have established the basis for the retrospective premium charges. Those records, the trial court noted, were destroyed by American in 1987 as part of its internal records retention and destruction schedule, and consisted of the underwriting and audit files, which the court believed "would have revealed important factors which impacted on the retrospective premium claimed."

The trial court may assess the reliability of documentary evidence in light of the testimony of witnesses. *See Schmidt v. Schmidt*, 432 N.W.2d 860, 864 (N.D.1988). Evidence admissible under N.D.R.Ev. 803(6) need not be accepted by the court "as an absolute fact or as prima facie evidence of a fact." *Pulkrabek, Inc. v. Yamaha Intern. Corp.*, 261 N.W.2d 657, 660 (N.D.1977). The trial court simply was not persuaded by American's evidence in this case. The court's finding that American failed to prove its claim for retrospective premiums by a preponderance of the evidence is not clearly erroneous. We conclude the trial court did not err in dismissing American's complaint.

## II

Midwest asserts the trial court erred in dismissing its counterclaim on the basis it was barred by the six-year statute of limitations under N.D.C.C. § 28–01–16(1). Mid-

west contends its counterclaim is not time barred because the account between the parties was a mutual, open account as defined by N.D.C.C. § 28–01–37:

> *"When claim for relief upon open account accrues.* In an action brought to recover a balance due upon a mutual open, and current account, when there have been reciprocal demands between the parties, the claim for relief is deemed to have accrued from the time of the last item proved in the account on either side."

In *Everson v. Partners Life Ins. Co.*, 268 N.W.2d 794, 796 (N.D.1978), we adopted the definition of "mutual account" given in *In re Vicen's Estate*, 1 Wis.2d 193, 83 N.W.2d 664, 667 (1957):

> " '. . . an account wherein are set down by express or implied agreement by the parties concerned a connected series of debit and credit entries of reciprocal charges and allowances, where the parties intend that the individual items of the account shall not be considered independently, but as a continuation of a related series, and that the account shall be kept open and subject to a shifting balance as additional related entries of debits and credits are made thereto, until it shall suit the convenience of either party to settle and close the account; . . .' "

We further explained the requirements for a mutual, open account in *State, Etc. v. Hintz*, 281 N.W.2d 564, 567 (N.D.1979):

> "A mutual account arises where there are items debited and credited on both sides of the account which indicate mutual transactions between the parties. See, generally, 1 Am.Jur.2d Accounts and Accounting, § 5, at 374–375. It has been said that, as a matter of law, an account is mutual when the evidence of the items thereof shows that, at various times, the respective parties were indebted to each other. *Hardin v. Stanton*, 14 Ga.App. 299, 80 S.E. 698 (1914). The statute of limitations begins to run on a mutual account at the time the last item is proved in the account on either side (§ 28–01–37, NDCC). An account involving only charges on the one side and payments on the other is not a mutual account but a simple open account. *Eren-*

*feld v. Erenfeld,* 196 N.W.2d 406 (N.D. 1972); *Hansen v. Fettig,* 179 N.W.2d 739 (N.D.1970). An 'open account' is defined as one in which some item is not settled by the parties, or where there have been running or current dealings between the parties and the account is kept open with an expectation of further dealings. See *Griggs–Paxton Shoe Co. v. A. Friedheim & Bro.,* 133 S.C. 458, 131 S.E. 620, 624 (1926)."

■ In determining whether the parties' account in this case was a mutual account, the nature of retrospective premiums must be examined. Generally, a retrospective premium endorsement in an insurance policy provides for adjustment of the premiums due under the policy based on claims and loss experience. *Transall, Inc. v. Protective Ins. Co.,* 107 N.C.App. 283, 419 S.E.2d 368, 369 (1992). As explained in 14 J. Appleman, *Insurance Law and Practice,* § 7849.25, at pp. 136–137 (1985) (footnotes omitted), the purpose of a retrospective premium endorsement is

"to make the premium more closely reflect the actual loss and cost experience of the insured averaging out such experience over an extended period, usually three years. When the policy is issued, an estimated standard premium is set. This premium is only an estimate and normally does not represent the final premium although it may be relevant to the computation of that premium. Maximum and minimum premiums also are usually set. The final premium is based on several factors, including the insured's actual incurred losses. Computation based on the whole period of the policy is proper."

Thus, if the actual losses incurred for the policy period prove to be less than the estimated claims, the insured receives a partial rebate of the premium; but if losses are larger than estimated, the insured will be charged an additional premium. See *Corrado Bros. v. Twin City Fire Ins. Co.,* 562 A.2d 1188, 1190 (Del.1989). Because the final premium is based on the amount of money paid when all claims have been fully adjudicated, the amount owed may not be determined until some time after the expiration of the policy, at which time the insured receives a final bill. See *Draper v. Garcia,* 793 S.W.2d 296, 297 (Tex.Ct.Civ.App.1990). A retrospective premium endorsement enables an insurer to determine its incurred losses with finality and to adjust the final premium in relation to the loss experience. See *Pre–Fab Transit v. Northbrook Property,* 235 Ill. App.3d 103, 175 Ill.Dec. 623, 626, 600 N.E.2d 866, 869 (1992). At the same time, the retrospective premium provides an incentive for employers to provide safe work areas and thereby pay a lower premium for workers compensation coverage. See *In re North Side Lumber Co.,* 83 B.R. 735, 736 (9th Cir. BAP 1987).

■ The parties have not cited, nor have we found, any case law addressing whether the relationship between an insured and an insurer under a retrospective premium endorsement constitutes a mutual, open account for purposes of determining when an action accrues to start the running of a statute of limitations. *But see generally Security Mgt. v. Hartford Ins. Co.,* 641 So.2d 184, 185 (Fla. Ct.App.1994) (court described lawsuit to recover retrospective premium as action "on open account, account stated, and services rendered").

The trial court here focused on two provisions of the workers compensation insurance policy. A premium condition in the policy states that "[i]f the earned premium thus computed exceeds the premium previously paid, the insured shall pay the excess to the company; if less, the company shall return to the insured the unearned portion paid by the insured." The other provision, found in the retrospective premium endorsement, states that "[a]fter each computation, if the premium thus computed exceeds the premium paid for insurance subject to Plan D, the named insured shall pay the difference to the Company; if less, the Company shall return the difference to the named insured." The trial court ruled the account between the parties was not a mutual, open account, but was a simple open account, reasoning:

"The contract provision above quoted states an unambiguous intention to treat each charge or return as a separate item to be paid separately. The account was

not simply left open subject to a shifting balance as debits and credits were made until a settlement and closing date. Rather the contract requires payments as the balance shifted."

We believe the trial court correctly ruled that the account between the parties was not a mutual, open account within the meaning of N.D.C.C. § 28–01–37. A mutual, open account requires an intention that the individual items of the account not be considered independently, but that the account be kept open and subject to a shifting balance as additional related entries of debits and credits are made. *See Everson.* That does not describe the account relationship between the parties in this case.

Here, each time American calculated the appropriate retrospective premium adjustment figure, the entries were offset against each other, and either an amount was returned to Midwest or Midwest was billed for the amount due. The amount Midwest owed or the amount to be returned by American was ascertained annually and was expected to be settled annually after calculations were completed. Thus, the account was not left open, subject to a shifting balance, but was settled annually based on the retrospective premium adjustment calculated for the year. Midwest's refusal to pay its final billings, requiring American to offset credits which Midwest had coming against the amount already owed to American, did not turn the parties' account relationship into a mutual, open account.

Midwest asserts the trial court ignored other language in the policy which indicates further premium computations were contemplated until the computations were "final" and establishes the account was in fact a mutual, open account. But we construe an insurance contract as a whole to give effect to each of its provisions if possible. *Kief Farmers Co-op. Elevator v. Farmland,* 534 N.W.2d 28, 32 (N.D.1995). The existence of provisions contemplating further premium calculations does not create an irreconcilable conflict with what the trial court termed an intention to treat "each charge or return as a separate item to be paid separately." Rather, this comports with the nature of a retro-

spective premium endorsement under which the amount owed is generally not determined until some time after the policy expires. *See Draper.*

We conclude the trial court did not err in ruling N.D.C.C. § 28–01–37 does not apply in this case.

### III

■ Midwest asserts the trial court erred in holding that the "discovery rule" did not prevent the running of the statute of limitations under N.D.C.C. § 28–01–16(1). Under the discovery rule, "a cause of action, or claim for relief does not accrue until the aggrieved party discovers the facts which constitute the basis for its cause of action or claim for relief, ..." *Hebron Public School v. U.S. Gypsum,* 475 N.W.2d 120, 126 (N.D. 1991). Midwest argued it had no reason to know of its counterclaim against American until American brought this lawsuit. The trial court ruled otherwise, however, finding that Midwest "discovered its claim in 1984, or in the exercise of reasonable diligence should have discovered its claim no later than 1986." The trial court's finding is not clearly erroneous.

Midwest's counterclaim arose out of a $114,425 credit given to Midwest in 1982 on its premium payment after an audit. Although a Midwest representative testified the company received no notice of the credit, American's credit specialist testified statements of premium adjustments in the usual course of business would be sent to the insured. The trial court found that, under N.D.R.Ev. 407, the statement was sent to and received by Midwest. *See also State v. Wolff,* 512 N.W.2d 670, 673 (N.D.1994) ("There is a rebuttable presumption that letters duly directed and mailed are received in the regular course of the mail."); N.D.C.C. § 31–11–03(24).

Moreover, Midwest had notice of the 1982 audit because American's auditors visited Midwest's offices when they conducted it. The trial court stated it was "a fair inference that [Midwest] would certainly be looking for the results of that audit and did in fact receive knowledge of the credit on [the] pre-

mium." The court also noted that there were ongoing disputes over the years concerning retrospective premiums due under the policy, and that, in 1986, a Midwest representative computed what he believed the premium should be and withheld $169,000 in payment based on his calculations. The trial court found it doubtful those calculations would have been made without resort to the 1982 audit from which the counterclaim arose.

We conclude the trial court did not err in holding the discovery rule did not prevent the running of the statute of limitations.

## IV

 Midwest asserts the trial court erred in holding American was not estopped from asserting the statute of limitations as a defense. We disagree.

In order to assert an equitable estoppel claim under N.D.C.C. § 31–11–06 to preclude a finding that a lawsuit is time barred by the statute of limitations, Midwest must show that American made statements intending that Midwest would rely on them; that Midwest did in fact rely on them, and as a result failed to commence its action within the prescribed period; and that American's statements were made prior to expiration of the appropriate limitation period. *See Huber v.*

*Oliver County,* 529 N.W.2d 179, 182–183 (N.D.1995). Midwest had the burden of proving these elements. *See Burr v. Trinity Medical Center,* 492 N.W.2d 904, 908 (N.D. 1992).

We agree with the trial court that American "did not mislead [Midwest] and there is no proof of equitable estoppel." We have upheld the trial court's finding that Midwest had actual knowledge of the disputed credit at least by 1986. Midwest failed to show any affirmative conduct on the part of American that was intended to cause Midwest to fail to timely commence its action.

We conclude that the trial court did not err in finding that equitable estoppel did not bar application of the statute of limitations.

Accordingly, we affirm the dismissal of American's complaint and Midwest's counterclaim.

VANDE WALLE, C.J., and NEUMANN, SANDSTROM and MESCHKE, JJ., concur.