CLIFFORD C. STEICHEN, JR., *et al.*, Plaintiffs-Appellants, v. ALAN G. LEMON, Superintendent of the Kankakee County Educational Service Region, *et al.*, Defendants (Herscher Community Unit School District No. 2 *et al.*, Appellees).

Third District   No. 3—89—0216

Opinion filed January 4, 1990.

Miller, Hall & Triggs, of Peoria (Michael J. Tibbs, of counsel), for appellants.

Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Chicago (Everett E. Nicholas, Jr., of counsel), for appellee Herscher Community Unit School District No. 2.

No brief filed for other appellees.

PRESIDING JUSTICE HEIPLE delivered the opinion of the court:

This appeal involves the denial of a petition to detach certain territory from Herscher Community School District (hereinafter Herscher School District) and annex that territory to Dwight School District No. 232 (hereinafter Dwight School District). On July 1, 1988, R.U.C.E. Community Unit School District No. 3 (hereinafter R.U.C.E. School District), a rural school district suffering from declining enrollment, was dissolved and was annexed to Herscher School District. The plaintiffs, who reside in a portion of former R.U.C.E. School District located in or near Campus, Illinois (hereinafter Campus Territory), petitioned to detach the territory in which they reside from Herscher School District and annex it to Dwight School District. A

joint hearing was held on the detachment petition on July 20 and 25, 1988, before six regional boards of school trustees, pursuant to section 7—6 of the Illinois School Code (Ill. Rev. Stat. 1987, ch. 122, par. 7—6). At the conclusion of this hearing, the board of school trustees of the La Salle, Iroquois, and Livingston County educational service regions voted to approve the detachment. The board of school trustees of the Kankakee, Ford/Champaign and Grundy/Kendall educational service regions, however, voted to deny the detachment. Since the regional boards failed to enter a joint order either granting or denying the petition, regional superintendent of Kankakee County, Alan G. Lemon, entered an order denying the detachment petition in accordance with section 7—6 of the Illinois School Code (Ill. Rev. Stat. 1987, ch. 122, par. 7—6). Thereafter, the plaintiffs sought administrative review of the order denying the petition, and the circuit court affirmed the administrative order below.

The sole issue on appeal is to determine whether the administrative order denying the detachment of the Campus Territory from Herscher School District and the annexation of that territory to Dwight School District was against the manifest weight of the evidence. The nature of this issue compels this court to review the evidence presented to the hearing board and to determine if the hearing board properly evaluated the detachment petition in accordance with the Illinois School Code and with applicable case law. The evidence produced at the hearing can be categorized into four principal groups: (1) testimony of witnesses in favor of the detachment petition; (2) testimony of witnesses against the detachment petition; (3) evidence regarding the educational programs of both school districts; and (4) the economic impact that would result to the two school districts if detachment did occur.

The town of Campus is located approximately 12 miles from the town of Herscher and approximately 11 miles from the town of Dwight. Campus and Dwight are located in Livingston County, and Herscher is located in Kankakee County. The plaintiffs are 122 persons, who constitute approximately 70% of the 175 registered voters residing within Campus Territory. The petition by the plaintiffs was filed under section 7—2 of the Illinois School Code, which authorizes a petition by "two-thirds of the legal voters residing in any territory proposed to be detached from one or more districts." (Ill. Rev. Stat. 1987, ch. 122, par. 7—2.) During the hearing, the regional boards heard the following testimony by witnesses in favor of annexing the Campus Territory to Dwight School District.

Alan Montalto, a former R.U.C.E. school board member with two

school-aged children, testified that he has strong social and business ties with the town of Dwight and that he has no similar identification with the town of Herscher. Mr. Montalto further stated that he preferred that his children attend Dwight School District since, "Campus area kids will be in a position to receive more personal attention at the Dwight Schools since classes are not overcrowded." Mr. Montalto stated that, as a R.U.C.E. school board member, he voted for the annexation to Herscher School District because it was educationally advantageous for the annexation to occur. Clifford Steichen, chairman of the petition committee who has one school-aged child, also testified that he prefers Dwight School District because of the social and economic ties to the town of Dwight. Mr. Steichen stated that he shops, banks, and goes to the doctor and dentist in Dwight. Mr. Steichen admitted that he did not originally contest the annexation to Herscher School District since he saw the financial reasons behind the annexation.

Pegg Patchett, who has four school-aged children, additionally stated that she identified with the town of Dwight rather than the town of Herscher. Mrs. Patchett shops for groceries, buys farm supplies, and goes to the doctor and dentist in Dwight. Mrs. Patchett stated that she is in Dwight twice a week, whereas she goes to Herscher only once a year. Mrs. Patchett further stated that she is aware that Dwight School District has a higher tax rate than Herscher School District. Kevin Earing, who has two school-aged children, testified that unless the proposed detachment is approved, parents with more than one child will at some point have children attending grades kindergarten through sixth at a building located in the town of Reddick, while other children are attending junior high and high school in the town of Herscher. According to Mr. Earing, this will make it more difficult for him to keep up with his children's activities if those activities are occurring in two different communities. Mr. Earing further stated that since both of the Dwight schools are in the same community, he prefers that his children attend Dwight School District.

The regional boards additionally heard the following testimony by witnesses not in favor of detaching Campus Territory from Herscher School District. Eldon Brunner, a former R.U.C.E. school board member, stated that he worked on a subcommittee that studied all of the school districts adjacent to the R.U.C.E. School District, including Dwight School District, in order to compare the alternatives in case the R.U.C.E. School District was dissolved. Mr. Brunner voted for the annexation to Herscher School District because it offered the "best

overall curriculum" and because it offered the "best education that our taxes could provide."

James Girard, a member of the Herscher school board, testified that the school board would not agree to the detachment of Campus Territory because the possible loss of student population might result in the closure of Reddick Grade School. Michelle Schott, who presently has two school-aged children attending Reddick Grade School, stated that the unanimous decision of the R.U.C.E. school board should not be tampered with. Mrs. Schott testified that, in her opinion, the Herscher School District provided better educational opportunities than Dwight School District.

Likewise, Barb Mathison, a Campus Territory resident with two school-aged children, testified:

"My husband and I are residents and parents who are included in the detachment area. We feel the decision made on this detachment is one that should be based on curriculum and educational opportunities, and not based on political boundaries, local economics, and mere conveniences. Therefore, after studying the curriculum at both institutions we know that the R.U.C.E. School Board made the right decision in choosing the Herscher School District because it offers a broader curriculum and more class offerings.

Also, because one of us is employed in Dwight does not alter our feelings on what is best for our children's education, and the matter of convenience certainly does not outweigh Herscher's educational opportunities."

Matt Foley, a 16-year-old student at Herscher High School who is a Campus resident, also stated that he preferred the Herscher School District. Matt Foley gave a detailed statement comparing the course offerings of Herscher School District and Dwight School District and concluded his statement by stating:

"I believe that the Regional Board Members should also oppose the Campus Detachment Petition because it is not in the best interest of the students. Since Herscher offers a superior curriculum, no significant curriculum advantage is served by disrupting the children in the R.U.C.E. District and R.U.C.E.-Herscher annexation."

The substance of the evidence regarding the educational opportunities available at the two school districts reveals that both Herscher and Dwight School Districts are fully accredited by the North Central Association and recognized by the Illinois State board of Education. Larry Copes, superintendent of the Dwight School District, testified

on direct examination that after reviewing the report cards of both school districts, he felt that both education programs were "relatively similar." On cross-examination, after comparing the composite scores for specific courses, Mr. Copes stated that Herscher's scores on the report card were better than Dwight's. The evidence was undisputed that Herscher School District provides more course offerings in almost every academic field at the high school level and that the school district offers more extracurricular activities. Larry Jacobsen, superintendent of Herscher School District, testified regarding the specific extracurricular activities offered at both the junior and senior high levels. Mr. Jacobsen further stated that Herscher School District provides transportation through activities buses for those students staying after school to participate in extracurricular activities.

The regional boards also heard evidence regarding enrollment statistics at both of the school districts and the pupil-teacher ratio at both of the school districts. The evidence showed that both school districts could readily absorb the students from Campus Territory. The pupil-teacher ratio at Herscher High School is 16.2 and at Dwight High School is 13.2. The pupil-teacher ratio at Dwight Grade School is 19.3, while the average at the three Herscher grade schools, including Reddick Grade School, is 18.3.

Evidence was also presented with regard to the special education services offered by each school district. Dwight School District belongs to the Livingston County Special Services Cooperative, and most special education services offered through this cooperative are at sites outside the Dwight School District. Dwight Grade School has four full-time special education teachers, and Dwight High School has one full-time special education teacher.

Herscher School District employs a full-time director of special education, as well as a full-time psychologist, social worker, speech therapist, school nurse, 17 special education teachers and five aides. Most of Herscher School District's special education services are provided in district.

Several parents having children in need of special education services testified in opposition to the proposed detachment. Glenda Turner testified that if the detachment were granted, her son would be placed in special education classes in Dwight that were both overcrowded and understaffed. Another parent, James Smally, voiced concerns about Dwight's ability to meet the needs of his son, who requires demanding and intensive special education services. Mr. Smally expressed the view that a six-year, productive relationship with the Kankakee Area Special Education Cooperative would be undermined

if the detachment were to occur.

Herscher School District further contends that if detachment of the Campus Territory from Herscher is granted, the number of students at Reddick Grade School will decrease to the point that serious consideration would have to be given to closing the building. Reddick Grade School is located in a portion of former R.U.C.E. School District which includes the town of Reddick and the town of Union Hill, but is separate from Campus Territory. Closing Reddick Grade School would result in a reduction in force of five certified and three noncertified Herscher employees. Herscher also argues that nondetachment Herscher students will suffer if Reddick Grade School closes, since they will have to be bused to another Herscher grade school farther from home.

The last category of evidence produced, which the regional boards was required by statute to consider, was the division of funds and assets which would result from a change in school district boundaries. If the proposed detachment petition is granted, the two Dwight schools stand to gain over $178,000 in property tax revenue, while Herscher will lose $130,000 in property tax revenue. The difference in these amounts stems from the fact that Dwight School District's property taxes are approximately $1.03 per hundred dollars of equalized assessed valuation higher than Herscher School District's. Further, Herscher School District would lose some State aid, but in turn, would not have to pay the expense of educating those students attending Dwight School District. At the time of hearing, Herscher School District had a positive operating fund balance of at least $1,500,000.

Immediately following the presentation of the aforementioned evidence and closing arguments, the separate six regional boards of school trustees each met to discuss and weigh the evidence. Thereafter, by virtue of the split vote between the regional boards, an administrative order denying the detachment petition was entered by the regional superintendent of schools for the Kankakee educational service region. The superintendent's order was mandated by section 7—6 of the Illinois School Code, which provides that, "If the regional boards of school trustees fail to enter a joint order either granting or denying the petition, the regional superintendent of schools for the educational service region in which the joint hearing is held shall enter an order denying the petition ***." Ill. Rev. Stat. 1987, ch. 122, par. 7—6.

Subsequently, the trial court affirmed the administrative order below and filed a memorandum explaining the reasoning behind the de-

cision. The trial court first found:

"It is the court's opinion that both districts would provide a good and roughly equivalent education, although the balance tips slightly in favor of Herscher. In any event, if the decision under review is thought to involve a finding favorable to Herscher, the court is unable to conclude such a finding is contrary to the manifest weight of the evidence."

The trial court then concluded "the evidence does not show any economic loss to Herscher severe enough to prevent detachment." Finally, the trial court, after reviewing the applicable statutory standard for detachment proceedings and the relevant case law, held:

"On both academic standards and extracurricular activities the evidence, on balance, favors Herscher. It is the court's opinion that even the growing trend towards accommodating the wishes of the parents should not result in a reversal of the Regional Superintendent's order under the facts of this case."

We agree with the trial court's findings and accordingly affirm.

■■ Initially, it is important to point out that in reviewing the administrative order of the regional boards, this court should not set aside their determination unless it is contrary to the manifest weight of the evidence. (*Board of Education v. Regional Board of School Trustees* (1982), 89 Ill. 2d 392.) Notwithstanding, the "rule which accords a *prima facie* validity to administrative decisions does not relieve a court of the important duty to examine the evidence in an impartial manner and to set aside an order which is unsupported in fact." (*Oakdale Community Consolidated School District No. 1 v. County Board of School Trustees* (1957), 12 Ill. 2d 190, 195.

■ Section 7—6 of the School Code establishes statutory guidelines for the evidence to be considered by regional boards of school trustees when hearing petitions to change school boundaries. In pertinent part, the statute reads as follows:

"The regional board of school trustees, or regional boards of school trustees in cases of a joint hearing shall hear evidence as to the school needs and conditions of the territory in the area within and adjacent thereto and as to the ability of the districts affected to meet the standards of recognition as prescribed by the State board of Education, and shall take into consideration the division of funds and assets which will result from the change of boundaries and shall determine whether it is to the best interests of the schools of the area and the educational welfare of the pupils that such change in boundaries be granted ***." Ill. Rev. Stat. 1987, ch. 122, par. 7—6.

Based upon this statutory language, the Illinois Supreme Court has adopted the following rule: the welfare of the affected districts and their pupils as a whole must control, and such petitions should be granted only where the benefit derived by the annexing and affected areas clearly outweighs the detriment resulting to the losing district and the surrounding community as a whole. (*Oakdale Community Consolidated School District No. 1 v. County Board of School Trustees* (1957), 12 Ill. 2d 190.) As was noted by this court in several recent cases, the *Oakdale* standard has been substantially built upon since its inception. (*Wirth v. Green* (1981), 96 Ill. App. 3d 89; *City National Bank v. Schott* (1983), 113 Ill. App. 3d 388.) Most importantly, for purposes of this appeal, the courts have looked to several additional factors in determining the educational welfare of the pupils involved.

On appeal, the thrust of the plaintiffs' argument centers around the alleged failure of the regional boards to consider the "whole child" factor and the "community of interest" factor when evaluating the educational welfare of the Campus Territory students. Consequently, the plaintiffs contend that the administrative order denying the detachment petition and the subsequent trial court ruling were against the manifest weight of the evidence.

In *Board of Education v. Regional Board of School Trustees* (1982), 89 Ill. 2d 392, the Illinois Supreme Court reviewed the "whole child" and "community of interest" factors:

"The 'whole child' factor and the closely related 'community of interest' factor are not improper considerations in determining the wisdom or unwisdom of shifting the boundaries of school districts. The former factor recognizes that extracurricular participation in social, religious and even commercial activities is important in a child's development as a beneficial supplement to the child's academic involvement. (*School District No. 106 v. County Board of School Trustees* (1964), 48 Ill. App. 2d 158.) Too, in annexation-application hearings it is proper to ascertain whether the petitioning area is identified with the school district and the community to which annexation is requested. If a child attends school in his natural community it enhances not only his educational opportunity but encourages his participation in social and other extracurricular activities that figure importantly in the 'whole child' idea."

In *Board of Education of Golf School District No. 67*, the supreme court, after reviewing evidence involving the physical proximity of the two Cook County school districts to the petitioning residents and the extracurricular programs offered by the competing

school districts, found that the regional board's decision to grant annexation was not contrary to the manifest weight of the evidence.

Similarly, this court applied the "whole child" and "community interest" factors in reviewing a disconnection petition. (*City National Bank v. Schott* (1983), 113 Ill. App. 3d 388.) In *Schott*, this court evaluated these factors by comparing the quality and physical proximity of both schools and the extracurricular facilities and programs offered by the competing school districts. Here, the court found that the close proximity of the Bradley School District to the residents and the availability of extracurricular programs were proper considerations in granting the disconnection petition. *City National Bank*, 113 Ill. App. 3d at 394.

■■ This court finds that there are several distinctions between the evidence produced in this case and the evidence presented in either *Board of Education of Golf School District No. 67* or *Schott*. First, Campus is a small rural community situated about an equal distance from the town of Herscher and the town of Dwight. In *Schott*, the territory to be annexed was within the corporate limits of the Village of Bradley, and in *Board of Education of Golf School District 67*, the territory to be annexed was within Cook County. Thus, Campus is not in close proximity to the schools to be annexed, as was the situation in the aforesaid cases. Second, unlike either of the aforementioned cases, the plaintiffs never identified what extracurricular activities are offered at the Dwight School District, nor did they address the specific activities that might be offered to Campus Territory students by churches, park districts, or other organizations in the town of Dwight. In both *Board of Education of Golf School District No. 67* and *Schott* substantial evidence was produced regarding such activities. Therefore, this court finds that the plaintiffs failed to present substantial evidence on the "whole child" and "community of interest" factors.

■■ The plaintiffs argue, however, that the fact that 70% of Campus Territory residents signed the detachment petition, along with the testimony of witnesses in favor of detachment, is sufficient evidence to show a community of interest with the town of Dwight. The plaintiffs maintain that because of the convenience provided by attending school in one's natural community, participation in curricular and extracurricular activities will be enhanced. Although personal convenience of parents is a consideration, this alone is insufficient to overturn the decision of the regional boards.

Since *Oakdale*, several appellate courts, including this court, have given substantial weight to the wishes of the residents of the detach-

ment area. (*Wirth v. Green* (1981), 96 Ill. App. 3d 89.) Nevertheless, these cases have involved "situations where a transfer of territory from one school district to another would result in no harm financially or educationally to either district or its pupils." (*Wirth*, 96 Ill. App. 3d at 91.) In the instant case, we agree with the trial court that it was not against the manifest weight of the evidence for the regional boards to find that Herscher School District offered a better educational program for the Campus Territory students.

Here, the regional boards could have looked at the curriculum differences between the two school districts, the testimony of the witnesses, and the distinctions in extracurricular programs and found that it was in the best interest of the students to remain in Herscher School District. Herscher School District presented specific testimony about their extracurricular program and their witnesses testified about the distinctions in course offerings between the two school districts. On the other hand, the plaintiffs' witnesses testified for the most part on matters of convenience, *i.e.*, they had more social and business ties to the town of Dwight. While we recognize that the parents' commercial and social ties to the town of Dwight are not improper considerations, those considerations should not control if there is sufficient evidence to show that Herscher School District provides better educational and extracurricular opportunities.

A further reference to the language of section 7—6 is appropriate at this point: "The regional boards *** shall hear evidence as to *** the *educational welfare* of the pupils ***." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 122, par. 7—6.) As was stated by the trial court: "The educational welfare of the pupils is a salient factor in the outcome, and it can hardly be said that their welfare would be improved by transferring them to a district with even slightly inferior programs and facilities." In reaching our holding, we are cognizant of the fact that it is not the role of the judiciary to sit as a super school board to analyze the complex factors involved in a determination of what is best for the educational welfare of the students. Rather, we must determine if the decision of the regional boards was against the manifest weight of the evidence and if the proper legislative standards were complied with. We cannot find that the regional boards' decision was unsupported in fact. Further, the statutory guidelines were followed. Accordingly, we affirm.

Affirmed.

BARRY and STOUDER, JJ., concur.