BOARD OF EDUCATION OF COMMUNITY UNIT SCHOOL DISTRICT No. 337, Hancock, McDonough, Adams and Schuyler Counties, *et al.*, Plaintiffs-Appellants, v. BOARD OF EDUCATION OF COMMUNITY UNIT SCHOOL DISTRICT No. 338, Hancock County, *et al.*, Defendants-Appellees (Regional Board of School Trustees of Hancock/McDonough Counties *et al.*, Petitioners; Ralph Grimm *et al.*, Petition Supporters; David Roberts, Petition Objector).

Third District No. 3—94—0422

Opinion filed February 10, 1995.—Rehearing denied April 18, 1995.

James A. Rapp, of Hutmacher, Rapp & Ortbal, P.C., of Quincy, for appellants.

David M. Smith, of Springfield, for appellee Regional Board of School Trustees of Hancock/McDonough Counties.

Samuel Naylor VI, State's Attorney, of Carthage, appellee *pro se.*

David Roberts, of Plymouth, appellee *pro se.*

JUSTICE BRESLIN delivered the opinion of the court:

The Board of Education of Community Unit School District No. 337 (Southeastern) appeals from a circuit court order which affirmed an administrative order of the Regional Board of School Trustees of Hancock/McDonough Counties (Regional Board or Board). The Regional Board's order granted a petition to detach certain territory from Southeastern for annexation to Community Unit School District No. 338 (District 338). Southeastern raises the following issues on appeal: (1) whether the detachment petition was a successive petition filed in violation of section 7—8 of the School Code (105 ILCS 5/7—8 (West Supp. 1993)); (2) whether the Regional Board's decision to grant the detachment petition was against the manifest weight of the evidence; and (3) whether alleged procedural errors by the Regional Board constitute reversible error. For the reasons that follow, we affirm.

## FACTS

The detachment petition at issue in this case was filed on February 11, 1993. It affected 10 students in a territory of approximately 5,635 acres. The territory's assessed valuation was $459,610, which constituted 2% of Southeastern's total assessed valuation. If passed, the detachment would allow the affected students to attend a District 338 school in Carthage, Illinois.

The Regional Board convened a hearing on the petition on April 5, 1993. Nine parents of affected students testified in support of the petition. The primary reasons they gave for favoring detachment were the availability of day care in Carthage, Carthage's proximity to U.S. Route 136, the availability of extracurricular activities at Carthage schools, and the availability of medical attention in Carthage. One parent testified that his property values suffered because his property was located within Southeastern's borders.

Terry Robertson, Southeastern's superintendent, testified in opposition to the petition. Robertson disclosed that Southeastern was in the process of accommodating territory it acquired in 1992 when the Plymouth school district dissolved. The majority of the territory in this detachment petition included property acquired in the Plymouth

dissolution. Southeastern had assumed Plymouth's debt obligations upon Plymouth's dissolution. Robertson argued that Southeastern should be given the opportunity to adjust to the Plymouth dissolution without having to face the effects of a detachment. On cross-examination, Robertson admitted that the detachment would not threaten Southeastern's recognition status or cause the district to lay off teachers.

At the close of evidence, the Regional Board voted to grant the petition. In its written order the Board found that proximity to U.S. Route 136 and to medical attention favored detachment. It also found that the detachment would not threaten Southeastern's recognition status and that the 2% drop in assessed valuation would not threaten the district's financial stability. The Board found further that the detachment would favor the territory's property values and would limit disruptions to the affected parents' workplaces.

Southeastern then filed a request for rehearing along with a motion to dismiss the detachment petition. The basis for the motion to dismiss was that the petition was a successive petition brought in violation of section 7—8 of the School Code. Section 7—8 generally prohibits consideration of a detachment petition involving the same territory that was involved in a petition that was denied within the previous two years. It was disclosed that a detachment petition was filed with the Regional Board in August of 1991 to detach territory from the then-existing Plymouth school district for attachment to District 338. That petition, which was denied, affected 16 students in a territory consisting of approximately 7,480 acres. The territory's assessed valuation was $734,234, which was 8% of Plymouth's total assessed valuation. The subject territory of the 1993 petition was contained within the subject territory of the 1991 petition.

Both parties submitted written arguments on section 7—8's applicability and the Regional Board heard oral arguments on June 3, 1993. After hearing arguments, the Board voted to deny the request for rehearing and the motion to dismiss. Southeastern then requested an opportunity to make an offer of proof of the evidence it would submit at a rehearing. The Board refused that request as well.

Southeastern sought administrative review in the circuit court of Hancock County. The court affirmed the Regional Board in all respects. It first found that the 1993 petition was not barred under the terms of section 7—8. The court ruled that although the petition did fall within section 7—8's purview, the 1993 petition was substantially different from the 1991 petition, thereby bringing the 1993 petition within an exception to section 7—8's two-year ban. In support of this ruling the court noted that the 1991 petition was

brought against Plymouth, not against Southeastern, and that the 1993 petition sought detachment of territory that was smaller in terms of land, assessed valuation, and number of affected students than the territory involved in the 1991 petition.

The trial court also ruled that the Regional Board's decision to grant the detachment petition was supported by the evidence and that the Regional Board's alleged procedural errors did not warrant remand. This appeal followed.

## STANDARD OF REVIEW

■ The Regional Board's orders are administrative decisions for purposes of the Administrative Review Law. (See 105 ILCS 5/7—7 (West 1992).) Accordingly, our scope of review extends to all questions of law and fact presented by the record. The factual findings of an administrative agency are held to be *prima facie* true and correct. (735 ILCS 5/3—110 (West Supp. 1993).) However, where the findings of fact are against the manifest weight of the evidence and it is clearly evident that the board should have reached the opposite conclusion, the reviewing court may reverse the agency's findings of fact. (*City of Freeport v. Illinois State Labor Relations Board* (1990), 135 Ill. 2d 499, 554 N.E.2d 155.) The courts need not defer to the administrative agency's decisions on questions of law, such as the proper interpretation of a statute. *City of Burbank v. Illinois State Labor Relations Board* (1989), 128 Ill. 2d 335, 538 N.E.2d 1146.

## SUCCESSIVE PETITION ISSUE

Southeastern argues first that section 7—8 of the School Code barred the Regional Board from considering the 1993 detachment petition. Before addressing the merits of this argument, we must first consider a related procedural issue. Southeastern contends that remand is necessary because the Regional Board failed to consider section 7—8's applicability and because the trial court resolved the issue without first remanding to the Board for relevant findings. We do not agree that the Board never considered section 7—8's applicability. Moreover, we find that the trial court was sufficiently apprised of the relevant factors to render effective judicial review of this issue.

■ The record does not show that the Regional Board failed to consider the successive petition issue. Terry Robertson raised the issue on Southeastern's behalf at the April 5, 1993, hearing. The Board also considered written and oral arguments on the issue before denying the motion to dismiss. Thus, even though the Regional Board did not make an explicit finding, it is obvious that the Board considered

the matter and found that section 7—8 did not bar consideration of the 1993 petition.

An administrative agency need not make extensive findings of fact in detachment and annexation proceedings. (*Dresner v. Regional Board of School Trustees* (1986), 150 Ill. App. 3d 765, 501 N.E.2d 983.) The orders issued in such proceedings need only contain sufficient findings to permit adequate judicial review. (*Board of Education of Community Unit School District No. 300 v. County Board of School Trustees* (1978), 60 Ill. App. 3d 415, 376 N.E.2d 1054.) In this case the facts relevant to the successive petition issue (*e.g.*, the substance and dates of the petitions) were not in dispute. Moreover, section 7—8's applicability is a question of law, and the trial court was not constrained to accept the Board's legal conclusions. Therefore, the Board's failure to make explicit findings did not impair the trial court's ability to determine whether section 7—8 barred the 1993 petition.

■ We now turn to the merits of the successive petition issue. Section 7—8 provides in relevant part:

> "§ 7—8. Limitation on successive petitions. No territory, nor any part thereof, which is involved in any proceeding to change the boundaries of a school district by detachment from or annexation to such school district of such territory, and which is not so detached nor annexed, shall be again involved in proceedings to change the boundaries of such school district for at least two years after final determination of such first proceeding *unless during that 2 year period a petition filed is substantially different than any other previously filed petition during the previous 2 years* \*\*\*." (Emphasis added.) (105 ILCS 5/7—8 (West Supp. 1993).)

Here there is no dispute that the 1993 petition was filed within two years of the 1991 petition, or that the 1993 petition included territory that was also the subject of the 1991 petition. Therefore, our resolution of this issue turns on whether the 1993 petition was "substantially different" from the 1991 petition. No other court has passed on the meaning of "substantially different" in this context.

When interpreting a statute, a court must ascertain and give effect to the legislature's intent in enacting the statute. (*Kararo v. Ruiz* (1990), 201 Ill. App. 3d 61, 559 N.E.2d 275.) In doing so the court should consider first the statutory language (*Cunningham v. Huffman* (1993), 154 Ill. 2d 398, 609 N.E.2d 321), and should also examine the statute as a whole, taking into consideration its nature and purposes, as well as the evil it was intended to remedy. (*Knox County Board of Review v. Illinois Property Tax Appeal Board* (1989), 185 Ill. App. 3d 530, 541 N.E.2d 794.) Finally, the courts are required, where

possible, to give statutory language its plain and ordinary meaning. *In re Board of Library Trustees of the Milan-Blackhawk Area Public Library District Annexation* (1992), 237 Ill. App. 3d 835, 604 N.E.2d 1025.

In construing a prior version of section 7—8, this court held that the legislature's purpose in limiting successive petitions for a period of time was to prevent harassment of "County Boards, School Boards of affected districts, and interested persons." (*Hall Township High School District No. 502 v. County Board of School Trustees* (1967), 80 Ill. App. 2d 475, 477, 225 N.E.2d 28, 29.) As construed in *Hall*, section 7—8 barred successive petitions for a one-year period without exception. The legislature amended section 7—8 in 1992 to lengthen the prohibition period from one year to two years. The amendment also added several exceptions, including the "substantially different" exception at issue here.

The House and Senate floor debates do not indicate why the legislature lengthened the prohibition period subject to exceptions. It is safe to surmise, however, that the one-year period was found to be insufficient to protect the relevant groups from harassment. By subjecting the expanded prohibition period to exceptions, the legislature recognized that, in appropriate circumstances, successive petitions were warranted despite the two-year ban. One such circumstance is where a petition is "substantially different" from a previously filed petition involving the same territory. The legislature's failure to define "substantially different" indicates that it intended for regional boards and the courts to construe the term in a manner consistent with its plain meaning and with section 7—8's underlying purpose.

Our task, then, is to determine whether a finding that the 1993 petition was substantially different from the 1991 petition comports with the plain meaning of "substantially different" and is consistent with section 7—8's underlying purpose.

One meaning of "substantial" is "considerable in quantity." (Webster's New Collegiate Dictionary 1153 (1981).) The trial court noted several quantitative differences between the two petitions. The 1993 petition involved 25% less land, 37% less assessed valuation, and six fewer students than the 1991 petition. Whether these figures are "substantial" depends, we think, upon one's perspective. From the perspective of this reviewing court, these quantitative differences are not so blatantly insignificant as to require reversal.

■ Southeastern contends that quantitative differences should not factor into the determination of whether one detachment petition is "substantially different" from another. It cites *City of Freeport v.*

*Illinois State Labor Relations Board* (1990), 135 Ill. 2d 499, 554 N.E.2d 155, for the proposition that "substantially different" should be measured only by qualitative differences. We find *City of Freeport* to be inapposite to the case before us.

The issue in *City of Freeport* was whether the Illinois State Labor Relations Board erred in determining that certain fire and police department employees were not supervisors under section 3(r) of the Illinois Public Labor Relations Act (Ill. Rev. Stat. 1987, ch. 48, par. 1603(r)). Section 3(r) defines "supervisor" in part as one whose principal work is "substantially different" from that of his subordinates. The court held that the applicable test under section 3(r) required a qualitative analysis of the employee's powers and duties, rather than a quantitative analysis of the time spent by the employee in the exercise of such duties. *City of Freeport*, 135 Ill. 2d at 518, 554 N.E.2d at 164-65.

Southeastern's reliance on *City of Freeport* is misplaced. The qualitative analysis required under *City of Freeport* was appropriate because differences among jobs are measured, for the most part, in qualitative terms. By contrast, any differences between the subject territories of two petitions are necessarily quantitative. We think quantitative differences between subject territories are helpful in determining whether one petition is substantially different from another. Therefore, we do not accept Southeastern's contention that quantitative factors are irrelevant to an analysis under section 7—8.

■ It is true, however, that there may be qualitative differences between detachment petitions. For example, two petitions may differ in terms of the identity of the petitioners and their purposes in seeking detachment. Petitions may also differ in terms of the school districts against which they are directed. In this case, the trial court found it significant that the 1991 petition was directed against the Plymouth district, whereas the 1993 petition was directed against Southeastern. We agree that this is significant. Since Southeastern was not required to expend resources in resisting the 1991 petition, the 1993 petition cannot be seen as harassment of Southeastern. Therefore, the Regional Board's consideration of the 1993 petition was not inconsistent with section 7—8's underlying purpose.

We are unwilling to supply a bright-line test to determine when quantitative differences between subject territories are "substantial" for purposes of section 7—8. Nor can we pinpoint a sufficient mix of quantitative and qualitative factors which would categorically satisfy the "substantially different" requirement. Regional boards and reviewing courts must consider, on a case-by-case basis, whether a petition is so similar to a previously denied petition that the affected

parties' resources would be unduly taxed by consideration of the subsequent petition. In this case the trial court found sufficient quantitative and qualitative factors to determine that the 1993 petition was substantially different from the 1991 petition. Accordingly, section 7—8 was no bar to the Regional Board's consideration of the 1993 petition.

## MERITS OF THE PETITION

■ We next turn to Southeastern's claim that the grant of the 1993 petition was against the manifest weight of the evidence. Section 7—6 of the School Code provides that a regional board:

> "shall hear evidence as to the school needs and conditions of the territory in the area within and adjacent thereto and as to the ability of the districts affected to meet the standards of recognition as prescribed by the State Board of Education, and shall take into consideration the division of funds and assets which will result from the change of boundaries and shall determine whether it is to the best interests of the schools of the area and the educational welfare of the pupils that such change in boundaries be granted." (105 ILCS 5/7—6(i) (West Supp. 1993).)

Petitions for detachment and annexation should be granted only where the overall benefit to the annexing district and the detachment area clearly outweighs the resulting detriment to the losing district and the surrounding community as a whole. (*Carver v. Bond/ Fayette/ Effingham Regional Board of School Trustees* (1992), 146 Ill. 2d 347, 586 N.E.2d 1273.) The factors to be applied under this test include differences between school facilities and curricula, the distances from the petitioners' homes to the respective schools, the effect detachment would have on the ability of either district to meet State standards of recognition, and the impact of the proposed boundary change on the tax revenues of both districts. (*Bowman v. County Board of School Trustees* (1974), 16 Ill. App. 3d 1082, 307 N.E.2d 419.) In determining whether detachment would be in the best interests of the pupils' educational welfare, a regional board may consider the "whole child" by examining the likelihood of participation in school and extracurricular activities. (*Board of Education of Golf School District No. 67 v. Regional Board of School Trustees* (1982), 89 Ill. 2d 392, 433 N.E.2d 240.) When the record indicates that the board has considered the applicable statutory factors and its decision is supported by substantial evidence, the decision must be affirmed. *Carver*, 146 Ill. 2d at 363, 586 N.E.2d at 1280.

■ We agree with the trial court that the Regional Board's findings of fact are supported by the record and that it weighed the applicable statutory factors. Although the Board found that Southeast-

ern and District 338 were essentially equal in terms of facilities and curricula, and that detachment would not have a meaningful financial impact on either district, it found that Carthage's proximity to U.S. Route 136 would improve the affected children's chances to participate in extracurricular activities. Moreover, the Board found that Carthage offered close proximity to medical services. In view of these findings, the trial court's grant of the detachment petition was not against the manifest weight of the evidence.

Southeastern argues that the Regional Board should have given weight to the fact that Southeastern had assumed Plymouth's territory and debt obligations in 1992. Southeastern argues that a school district should not be subject to detachment proceedings so soon after assuming responsibilities as a result of a dissolution. We note, however, that unlike section 7—8's ban on successive detachment petitions, nothing in the School Code prohibits consideration of a detachment petition for a period following dissolution proceedings. In addition, the evidence adduced by the Regional Board showed that Southeastern's financial position would not be threatened by the detachment, even in view of the obligations Southeastern assumed as a result of the Plymouth dissolution. Therefore, Southeastern's involvement in the Plymouth dissolution did not require the Regional Board to reject the detachment petition.

## PROCEDURAL ERRORS

Finally, Southeastern contends that remand is proper because of several procedural errors made by the Regional Board. Specifically, Southeastern claims that the Board erred by: (1) not having rules regarding rehearings; (2) refusing to allow Southeastern to make an offer of proof at the June 3, 1993, hearing; (3) deliberating in private at both the April 5, 1993, and June 3, 1993, hearings in violation of the Illinois Open Meetings Act (5 ILCS 120/1 *et seq.* (West 1992)); and (4) failing to give proper notice of the April 5, 1993, hearing as required by the Open Meetings Act. None of these alleged errors require remand.

■ Southeastern first argues that the Regional Board erred by not having procedural rules for rehearings. Yet Southeastern fails to indicate what rules the Regional Board should have followed. Nor did Southeastern indicate what prejudice it suffered as a result of the Board's failure to follow such rules. We are convinced upon review of the record that Southeastern was given ample opportunity to present its case at both hearings. Therefore, this argument is without merit.

■ Second, the Regional Board did not err in denying Southeastern's request to make an offer of proof. An offer of proof is designed

to preserve error in the exclusion of evidence by disclosing the nature of offered evidence to which an objection is successfully interposed. (*Little v. Tuscola Stone Co.* (1992), 234 Ill. App. 3d 726, 600 N.E.2d 1270.) It appears from the transcripts of the hearing that Southeastern was given an adequate opportunity to present its case and that it offered no evidence which the Regional Board refused to consider. Moreover, Southeastern made its offer of proof after both sides had argued and the Board had made its decision to deny the motion to dismiss. Therefore, Southeastern's offer of proof served no purpose and was untimely.

▪ The third error alleged by Southeastern appears to be accurate, but it does not constitute reversible error. Section 2 of the Open Meetings Act requires all meetings of public bodies to be held in public. (5 ILCS 120/2 (West 1992).) The Act allows certain exceptions to this rule, none of which are applicable here.

The record discloses that the Regional Board adjourned to deliberate in private after the close of evidence at both hearings. The Board then reconvened and voted in open forum. Although this procedure may have been in violation of the Open Meetings Act, it does not render the proceedings null and void. (See *Betts v. Department of Registration & Education* (1981), 103 Ill. App. 3d 654, 431 N.E.2d 1112; *Board of Education of Community Unit School District No. 300 v. County Board of School Trustees* (1978), 60 Ill. App. 3d 415, 376 N.E.2d 1054.) Although we do not condone violations of the Open Meetings Act, we are unwilling to remand on the basis of this error.

▪ Finally, Southeastern claims that the Regional Board failed to give adequate notice of the April 5, 1993, hearing as required by section 2.02 of the Open Meetings Act (5 ILCS 120/2.02 (West 1992)). Southeastern claims that the Board's regular meetings were scheduled for 8 p.m., but that the April 5, 1993, meeting was rescheduled to 7 p.m., "resulting in confusion." Southeastern fails to disclose how this rescheduling violated the Open Meetings Act. The record, moreover, discloses that the Regional Board published extensive notices of the meeting, including the 7 p.m. meeting time, in both the Augusta Eagle and Tri-County Scribe newspapers. These notices were published for a one-week period beginning March 24, 1993. Both parties, and a quorum of the Board, were present at the meeting at 7 p.m. Therefore, we find that the Regional Board did not violate section 2.02 of the Open Meetings Act.

## CONCLUSION

In sum, we find that the 1993 petition was substantially different from the 1991 petition for the purposes of section 7—8 of the School

Code. We also find that the Regional Board's order granting the petition was not against the manifest weight of the evidence. Finally, any procedural errors by the Regional Board did not prejudice Southeastern and are not an adequate basis for remand.

For the foregoing reasons, the decision of the circuit court of Hancock County is affirmed.

Affirmed.

STOUDER, P.J., and HOLDRIDGE, J., concur.