CHARLES W. HELMIG III *et al.*, Plaintiffs-Appellants, v. REGIONAL BOARD OF SCHOOL TRUSTEES OF THE LA SALLE COUNTY EDUCATIONAL SERVICE REGION *et al.*, Defendants-Appellees.

Third District    No. 3—96—0374

Opinion filed January 3, 1997.

SLATER, J., specially concurring.

James P. Bartley (argued), Scott P. Uhler, and Michelle M. McGee, all of Klein, Thorpe & Jenkins, Ltd., of Chicago, for appellants Dr. John Jacobson, Peru Elementary School District No. 124 and Crystal Schlee.

Heidi A. Katz (argued), of Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Chicago, for appellees Dr. James Boyle, Albert Lemrise, Kathy Marinic, Robert T. Meehan, Linda Mudge, William Novotney, Timothy O'Toole, Oglesby School District No. 125, and Glenda Valle.

PRESIDING JUSTICE LYTTON delivered the opinion of the court:

The plaintiffs filed a petition seeking detachment from Oglesby School District No. 125 (Oglesby) and annexation to Peru Elementary School District No. 124 (Peru) 14 weeks after the Regional Board of School Trustees of the La Salle County Educational Region (Board) denied a similar petition. The Board denied the second petition, and the petitioners appeal. We affirm.

John F. Kennedy School District No. 129 was dissolved in 1992, and the land in the district was annexed to Oglesby. A number of the affected landowners objected to this change and filed a petition seeking annexation to Peru. The Board denied this petition on August 31, 1994.

On December 5, 1994, 27 of the 44 signers of the original petition signed a second petition seeking detachment from Oglesby and annexation to Peru. This petition included approximately 50% less land than the first petition and would have reduced the assessed valuation of the land in Oglesby by about half compared to the first petition. The second petition affected three students, while the first petition affected four. In all other relevant respects, the petitions were identical.

The parties stipulated that evidence from the first hearing could be considered in the second proceeding. The only additional evidence offered at the second hearing was a certified copy of the voter list for the revised detachment area, the testimony of Charles W. Helmig, one of the petitioners, and the deposition testimony of Dr. James Boyle, the superintendent of Oglesby. After reviewing all of the evidence, the Board denied the second petition. The petitioners appealed to the circuit court, which affirmed the Board's decision.

I

■ Before we may reach the merits of this case, we must consider whether the Board had jurisdiction over the second petition. Section 7—8 of the School Code (105 ILCS 5/7—8 (West 1994)) generally prohibits the filing of a petition for detachment within two years after the final denial of a similar petition. The statute states:

"No territory, nor any part thereof, which is involved in any proceeding to change the boundaries of a school district by detachment from or annexation to such school district of such territory, and which is not so detached nor annexed, shall be again involved in proceedings to change the boundaries of such school district for at least two years after final determination of such first proceeding unless during that 2 year period a petition filed is *substantially different* than any other previously filed petition during the previous 2 years ***." (Emphasis added.) 105 ILCS 5/7—8 (West 1994).

In this case, the Board denied the first petition on August 31, 1994, and the petitioners filed the second petition on December 5, 1994. Thus, the second petition was barred by statute unless it was "substantially different" from the petitioners' first request. See 105 ILCS 5/7—8 (West 1994).

In *Board of Education of Community Unit School District No. 337 v. Board of Education of Community Unit School District No. 338*, 269 Ill. App. 3d 1020, 1027, 647 N.E.2d 1019, 1024 (1995), this court stated that the legislature intended the statutory exception for "substantially different" petitions to be construed consistent with its intent to prevent harassment of parties affected by the petitions. We found no potential for harassment in that case because the same school districts were not involved in both petitions. *Board of Education*, 269 Ill. App. 3d at 1028, 647 N.E.2d at 1025.

■ We refused to apply a bright-line test to determine when substantial quantitative differences exist between districts or to delineate the precise combination of quantitative and qualitative factors necessary to qualify for this exception. *Board of Education*, 269 Ill. App. 3d at 1028, 647 N.E.2d at 1025. Quantitative factors are those that involve numerical or statistical differences between the petitions, such as changes in land area, assessed valuations and property tax revenues, other financial effects on the districts and the number of petitioners and students affected. Qualitative considerations include the identity of the petitioners and the districts, the nature of the evidence presented to the Board, the parties' interests and purposes, the potential for change in the districts' state recognition status or programs and public policy issues.

■ Although we continue to hew to fact-driven determinations in these cases, certain factors are relevant in deciding whether a subsequent petition fits within the statutory prohibition. Relevant considerations include: (1) the geographic boundaries of the subject areas (see *Board of Education*, 269 Ill. App. 3d at 1028, 647 N.E.2d at 1025); (2) the identity and purposes of the petitioners and the districts (see *Board of Education*, 269 Ill. App. 3d at 1028, 647 N.E.2d at 1025); (3) the convergence of the subject territory and the petitioners' interests; (4) the similarity of the evidence supporting the petitions; (5) public policy concerns; and (6) the length of time between the filings.

A

Factors Related to the Subject Territories and the Petitioners

■ Although the subject areas and the districts' assessed valuations differed in the two petitions, these factors are directly related

and must be considered within the full procedural and factual context of the case. Each of the 27 signers of the second petition had also signed the original petition, and the same two school districts were involved in both proceedings. In addition, the petitions involved nearly the same number of students.

In these cases, courts should also consider the convergence of the subject territories and the petitioners' interests. Here, the families of the only school age children in the detachment territory supported both petitions, and the parties took the same legal positions and represented the same set of interests at both hearings. The second petition simply reduced the geographic scope of the earlier petition to more narrowly focus on the families most directly affected by the change. This combination of quantitative factors and qualitative interests suggests that the two petitions are substantially the same.

### B

### The Evidence Presented

This conclusion is further bolstered by the admission of essentially the same evidence at both proceedings. Even the new evidence admitted at the second hearing related to the same educational programs, benefits, and interests that were examined during the first hearing. The similarity of the evidence also indicates that there is no substantial difference in the two petitions.

### C

### Public Policy

The degree to which the second petition implicates the legislative purpose of section 7—8 is a critical qualitative factor. Here, both proceedings required the same two school districts to expend resources to protect their interests. This duplication of effort and prevention of harassment of the defendants is precisely the reason the legislature adopted section 7—8. See *Board of Education*, 269 Ill. App. 3d at 1027, 647 N.E.2d at 1024.

### D

### Timing of Subsequent Filing

The length of time preceding the filing of the second petition is technically not a factor to be considered since section 7—8 bars *any* petition concerning boundary changes that is filed within two years after the denial of a substantially similar petition. However, as this period of time decreases, the potential for harassment increases. Thus, a relatively short time between a board's denial of a petition and the filing of another petition may merit particular scrutiny of

the circumstances surrounding the second petition. In the instant case, the second petition was filed only 14 weeks after the first petition was denied, an extremely short time period in which to ask the Board to reconsider the merits of a similar petition.

## E

### Summary

Although changes in boundaries, assessed valuations, or the number of petitioners and students may be significant, these quantitative factors alone do not make a subsequent petition substantially different *per se*. Indeed, a closer examination of the two petitions in this case shows many similarities. Here, less is not necessarily "substantially different." Courts must consider the full set of facts in each case, including the relevant qualitative factors. Because the petitions were not "substantially different," the second petition was barred by section 7—8 and should have been dismissed by the Board.

## II

Even if the Board had jurisdiction over the second petition, the evidence adequately supports its decision. The evidence showed that Oglesby would have suffered substantial financial harm if the petition had been granted; this harm was exacerbated by the fact that the special state aid Oglesby received due to its merger with the former Kennedy district was to end soon. If the petition had been granted, Peru's equalized assessed valuation would have been $85,508 per student, while Oglesby would have received only $65,293 per student, despite serving a larger proportion of low-income students. In addition, granting the petition would have required Peru to add a special minibus at a cost of approximately $4,375 per year, while Oglesby was able to accommodate the affected students without a significant increase in its transportation expenditures.

The record also supports the trial court's conclusion that even though Oglesby is a smaller district, its curriculum, facilities and staff are comparable to those of Peru. Standardized test scores from the two districts strengthen this conclusion. The record also indicates that Oglesby spends more per pupil and has a better student/teacher ratio than Peru. In sum, the petitioners failed to show that the educational needs of the three children in the subject territory would be better served by attending school in Peru.

The evidence shows that the petitioners have meaningful community ties to Oglesby. The children in the subject territory have friends who live in Oglesby, and the after-school care provider for

one of the children resides in Oglesby. Although the petitioners have a strong personal preference for Peru, this factor alone is insufficient to support the petition where the other relevant factors do not favor it. See *Steichen v. Lemon*, 192 Ill. App. 3d 714, 723, 548 N.E.2d 1385, 1391 (1990).

As we said in the first detachment case involving these petitioners, the Board's denial of the petition was not against the manifest weight of the evidence nor was the opposite conclusion clearly evident from the record. See *Board of Education*, 269 Ill. App. 3d at 1025, 647 N.E.2d at 1023.

### III

For the reasons stated, the judgment of the circuit court of La Salle County is affirmed.

Affirmed.

HOLDRIDGE, J., concurs.

JUSTICE SLATER, specially concurring:
I concur with that portion of the opinion contained in part I.